MURRAY McCONNELL, appellant, *v.* WILLIAM HODSON *et al.*, appellees.

*Appeal from Morgan.*

A. being indebted to B., gave to him as collateral security, two notes of a third person, secured by mortgage and payable to the administrator and administratrix of the estate of C., with no assignment thereon. A. had previously married the administratrix. The amount of the notes, when collected, was to be applied towards the discharge of B.'s claim. B. filed a bill to foreclose the mortgage, and A. answered, stating that the notes and mortgage were the property of the minor heirs of the estate of his intestate, and came to his hands as their guardian, and prayed that his answer might be taken as a cross bill, &c. He alleged that B. took them with a full knowledge of the facts, which B. denied: *Held*, that the circumstances under which they were received, should have put B. upon inquiry into A.'s title; and that, not having done so, he took the notes at the hazard that the legal rights of the parties might be asserted.

Possession, unattended by circumstances which, in a reasonable mind, ought to excite suspicion or distrust, or put the party on inquiry, is *prima facie* evidence of title to a promissory note. But the holder of a note which has been negotiated, may sometimes be called on to show in what manner he acquired possession, and that he paid a consideration for the same.

An executor, administrator or guardian may dispose of the personal estate or assets of his testator, intestate or ward, to a *bona fide* purchaser for a valuable consideration, and the contract will be obligatory, unless the purchaser knows, or had good reason to suspect that the sale is made with a design to misapply the funds to the prejudice of those interested in the estate, and the purchaser is not bound to see to the proper application of the money. But if, in either case, such sale is made by an executor, administrator or guardian, in payment of his own private debt, it is, *ipso facto*, a misapplication of such funds, and fraudulent and void as to those for whose benefit the estate or property is holden.

A defendant in a suit in chancery cannot make his answer a cross bill, and under it obtain any specific decree in his favor. In this way he cannot obtain affirmative relief, even though the parties may elect to consider the answer a cross bill.

BILL IN CHANCERY to foreclose a mortgage, &c., filed by the appellant against the appellees in the Morgan Circuit Court. The cause was heard before the Hon. Samuel D. Lockwood, at the November special term 1845, and a decree rendered against the complainant below, &c.

The substance of the bill, answers, &c., is set out by the Court in their Opinion.

McConnell *v.* Hodson *et al.*

*M. McConnell,, pro se,* cited *Field* v. *Schieflin,* 7 Johns. Ch. R. 150; *Sutherland* v. *Brush,* Ib. 17–23; *Swift* v. *Tyson,* 16 Peters, 16–22; showing that the case of *Bay* v. *Coddington,* 5 Johns. Ch. R. has been overruled.

The possession of the notes by Hodson was *prima facie* evidence of his owning them. *Ransom* v. *Jones,* 1 Scam. 292–3.

A secret equity is not protected against *bona fide* purchasers of a promissory note. *Murray* v. *Lilburn,* 2 Johns. Ch. R. 442.

*H. Dusenbury,* for the appellees, filed the following brief:

Hodson, as guardian of Swain's heirs, had no right to make such disposition of the trust property. Even if he intended that the property purchased by him, for the payment of which he pledged the trust property, should go to the benefit of the wards, he had no right to make the conversion.

The guardian's trust is one of obligation and duty, and not of speculation and profit. He cannot reap any benefit from the use of the wards' money. He cannot act for his own benefit in any contract, or purchase, or sale, as to the subject of the trust. 2 Kent's Com. 229, in conclusion of his lecture of "Guardian and Ward;" *Wormly* v. *Wormly,* 8 Wheat. 421; 5 Peters' Cond. R. 473, 481, 484. He can no more than can a factor pledge the property of his principal, and if the factor does, yet the principal is not precluded from recovering it of the pawnee, without any tender of the sum for which it was pawned. *Jarvis* v. *Rodgers,* 15 Mass. side page, 396.

As to the guardian's right to change or convert the trust property. The guardian must not convert the personal estate of the infant into real, or buy land with the infant's money, without the direction of a Court of Chancery. 2 Kent's Com. 230; 2 Story's Eq. Jur. 581–2–5–7; Toller's Law of Exr's. 182 –3; R. L. 455, § 9; *Davis, Adm'r,* v. *Harkness,* 1 Gilman. 173.

*W. Thomas* argued for the appellees.

By an agreement copied in the record, the question of

McConnell's right to the notes on Saunderson, was submitted to the decision of the Circuit Court.

McConnell sets out in the original bill, that the notes belong to him by virtue of an assignment executed by Hodson. The answer of Hodson denies McConnell's right to the notes in question, and insists that the notes belong to his wards.

1. Assuming that Hodson received the notes and mortgages as guardian, or in his 'character of administrator in right of his wife as administratrix, he has no right to apply them to the payment of his own debts. R. L. 457; *Stain* v. *Tyson*, 3 Hill's (N. Y.) R. 280.

2. If Hodson had no right to use the note to pay his own debt, and McConnell had notice of the trust, he acquired no right by his purchase. Story on Agency, 222–27; *Field* v. *Schieflin*, 7 Johns. Ch. R. 152, 160; *Armidon* v. *Wheeler*, 3 Hill's (N. Y.) R. 137; *Wormley* v. *Wormley*, 5 Peters' Cond. R. 482–3.

3. The statute in respect to guardians has made provision, prescribing limits to their rights, powers, and duties, and any act of a guardian in violation of law, would be fraudulent, and therefore, not binding upon the wards.

A party receiving notes, &c., from an agent or trustee, in order to be entitled to hold them, as against the owner, must receive them *bona fide*, and for value; and must have exercised reasonable caution. If he take them without due inquiry, under circumstances which ought to have excited suspicion, he will be liable to make them good to the owners. Principal and Agent, 310–11.

The appellees insist,

1. That the evidence proves conclusively, that the notes in question belonged to the wards of Hodson, and not to Hodson or his wife.

2. That McConnell was not a *bona fide* purchaser. The notes are payable to "Dodsworth, Adm'r and Swain, administratrix of Swain," and show on their face that they belonged to the estate of Swain. They were not indorsed, there was no evidence on or about them of Hodson's right, or that

they had been disposed of by the payees. "Reasonable, caution," would have led to an inquiry of Dodsworth in regard to the ownership of the notes, and the neglect to make such inquiry was gross negligence, and the party must abide the consequences.

The Opinion of the Court was delivered by

PURPLE, J.*  The complainant filed his bill in chancery against the defendants, in the Circuit Court of Morgan county, complaining that on the 28th day of March, 1841, Hodson made and executed to him three promissory notes for $290·84, $325·74, and $290·86, payable at 6, 9, and 12 months, with twelve per cent. interest, which were secured by mortgage on certain real estate, and prays for a decree for payment of the money, and in default, that the mortgaged premises may be sold, and the mortgage foreclosed.

The bill further charges, that on the 25th day of November, 1837, Henry Saunderson made, executed, and delivered the following promissory notes:

"$600.  Twelve months after date, for value received, I promise to pay Rebecca Swain, administratrix, and Richard Dodsworth, administrator of Thomas Swain, deceased, six hundred dollars, with interest at the rate of twelve per cent. per annum from this date until paid.  Witness my hand and seal, this 25th day of November, A. D. 1837.

Henry Saunderson, [Seal.]"

The other note is in the same form, for the sum of two hundred dollars.  That these notes were also secured by mortgage upon real estate belonging to Saunderson; that Dodsworth disposed of his interest in the notes and mortgage to Rebecca Swain, and delivered them to her, and that he, Dodsworth, has not now, and had not on the 4th day of March, 1842, any interest in said notes and mortgage; that after the notes were made, Rebecca Swain intermarried with Hodson, and that the notes, by her consent, passed into Hodson's hands, and became his property; that on the 4th

day of March, 1842, Hodson, to secure the payment of the notes given by him to complainant, delivered him these two notes and this mortgage against Saunderson, under the following agreement in writing:

"Murray McConnell has this day received of William Hodson the following notes for collection, all of said notes are signed by Henry Saunderson, to wit: one note for two hundred dollars, and one for six hundred dollars, with something more than one year's interest thereon at twelve per cent. per annum, said notes and mortgages, are also left with said McConnell, as collateral security for the payment of one thousand and eight dollars and thirty nine cents, with a credit of sixty four dollars and fifty cents, or more, if State Bank paper shall be worth more, as per receipt this day given to said Hodson by said McConnell. It is agreed by said Hodson that as said notes against Saunderson are paid, they are to be credited to said Hodson on said demand due said McConnell, and the said Hodson hereby agrees that if said notes shall not be paid in twenty or thirty days, that he, Hodson, will pay the said McConnell, said sum due him, with twelve per cent. interest thereon from this date.

March 4, 1843.　　　　　William Hodson. [Seal.]"

The bill concludes with a prayer that Saunderson may be made defendant, and decreed to pay said notes and mortgages to the complainant, and that the mortgaged premises may be decreed to be sold and the money paid to the complainant.

Hodson answered, and admits that he gave the notes and mortgage to McConnell, and states that on the 27th day of October, 1838, he was appointed guardian of the minor heirs of Swain, and that the notes against Saunderson to Swain's administrators were their property; that he received them as guardian of said minors; and charges that McConnell knew this at the time he took the notes; that he informed McConnell of this at the time he gave him the notes; that he does not remember that he made any assignment of the notes; that the contract was written by McConnell, and was not read by him; admits he signed it. He prays that his answer may be taken and considered a cross bill; that McConnell may

answer it, and that he may be decreed to surrender to him, as guardian of said minors, the notes and mortgage aforesaid, and for a perpetual injunction to restrain McConnell from proceeding to collect the notes.

McConnell answers, denying all knowledge that Hodson held the notes as guardian; and that he received them in good faith; denies that Hodson ever told him he held the notes as guardian; and states that he never knew Hodson was guardian for said minors, until he read Hodson's answer and cross bill; admits he knew from the face of the papers that the notes came from Swain's estate, but says he knew Hodson had married the widow, and that she was entitled to one third or more of the estate; that she was administratrix of the said estate; and that he found the notes and mortgage in Hodson's hands, he claiming them as his own.

General replications were filed to these answers. By consent, the affidavit of Richard Dodsworth was received in evidence. It proves that the notes were the property of the minor heirs of Swain; that they were delivered to said Hodson, as their guardian; and that Rebecca Swain had previously received her portion of the estate of Thomas Swain.

The following agreement is also made a part of the record:

"The parties agree to submit to the Court, whether McConnell is entitled to collect for his own use the money sought to be recovered in this suit, or whether the same belongs to Hodson, as guardian of the heirs of Swain. McConnell agrees not to proceed to collect the money recovered in a suit at law, brought by him in the name of Dodsworth, Hodson and wife, for his use, on said notes, on which he had recovered judgment at this term against Saunderson, until the Court shall decide this suit in chancery; and if the Court shall decide that he is not entitled to said money, then he is to desist from all further attempt to recover the same." Each party reserve the right to appeal to the Supreme Court. The Court decreed that the money, or notes and mortgages, belonged to Hodson, as guardian of the minor heirs of Swain; that the transfer to McConnell was illegal and void, and that he acquired no rights thereby; and granted a perpetual

injunction against him to restrain him from collecting the same for his use.

The errors assigned question the correctness of this decree.

On the part of the appellant it is contended, that he is a *bona fide* holder of these notes and mortgage; that he received them as security for a debt due from Hodson to him, and that he is not chargeable with notice, express or implied, that Hodson held them in the capacity of trustee or otherwise, except in his own right; that he had good reason to believe that they come to him through his wife, who was the widow of Swain, and as such entitled to a portion of the estate. While the defendants on their part insist, that the circumstances under which the securities were received by McConnell were such as should have put a reasonable and prudent man upon inquiry.

McConnell alleges, that at the time he took the claims, Hodson informed him they belonged to him and that he had a right to dispose of them. This Hodson denies, and charges that he informed McConnell that he held them as guardian, and calls upon McConnell to answer to this and other allegations in his answer or cross bill. McConnell replies, denying the whole, and affirming that he never knew that Hodson was guardian to Swain's heirs until the filing of Hodson's answer.

The bill, answers and proof show, in short, this state of facts; that Hodson was indebted to McConnell, that he gave him these notes and mortgage, as collateral security, to be collected and applied on his debt to McConnell; that the notes and mortgage were the property of the heirs of Swain, and that Hodson held them as guardian for said heirs, and that, except by what appears on the notes themselves, McConnell had no knowledge that they were held by Hodson in a fiduciary capacity. Is McConnell, under the circumstances, entitled to these notes and mortgage or the money due thereon? This, under the agreement between the parties, is the first question to be decided.

The notes are drawn payable to Richard Dodsworth,

administrator and Rebecca Swain, administratrix of the
estate of Thomas Swain, deceased.   They were found by
McConnell in the hands of the husband of the administra-
trix, not indorsed nor in any manner transferred to him.
There is no evidence in the record to show that any thing
relative to Hodson's title to the notes and mortgage passed
between him and McConnell at the time they were received
by him, and the question as to his knowledge of the interest
of Swain's heirs, must be decided in the same manner as if
no allegations of this sort had been made either in the bill or
answer.   The Court think the presumption of law under
the circumstances would be, that the notes and mortgage in
some manner belonged to the estate of Swain.   McConnell
admits that he knew from the face of the papers that they
come from the estate.   If this be true, it would be immate-
rial whether they were held for the benefit of the heirs, or as
assets in the hands of the administrators to be by them ap-
propriated in payment of the debts against the estate of the
intestate.   In either case, neither the administrator nor
any other person, who might improperly have obtained pos-
session of the property, could have any right or authority to
appropriate the same to his private use in the payment of his
debts or otherwise.

Had McConnell received the notes, &c., from the admin-
istrator in payment of, or as collateral security, for a debt due
him personally, it would have been clearly a misapplication
of the funds of the estate, and McConnell would have le-
gally been chargeable with full knowledge of this fraudulent
appropriation, and on application of the parties interested, a
Court of Equity would afford relief and restore the parties
to their rights.   Although he did not receive them of the ad-
ministratrix herself, yet he did receive them of the hus-
band, and that too, without any thing except the bare posses-
sion appearing to show that he had any interest in them.
Under such circumstances, he should have inquired into
Hodson's title.

Possession, it is true, unattended by circumstances which,
in a reasonable mind, ought to excite suspicion or distrust,

or put the party on inquiry, is *prima facie* evidence of title to a promissory note. Cases, however, not unfrequently occur, where the holder even of a note *which has been negotiated,* may be called upon to show in what manner he acquired possession, and that he paid a consideration for the same. In this case, McConnell cannot be treated or considered a *bona fide* holder or purchaser of these notes and mortgage. He gave nothing for them. He did not take them in the usual course of trade or business; nor in payment of a precedent debt; but only as collateral security for a claim, no portion of which is paid, relinquished or satisfied by the operation.

There cannot be a doubt, that had there been no legal or actual fraud in this case, and McConnell had received these notes before they were due, upon the same conditions as they were taken by him, that Saunderson might have set up against him any defence which he might have had against the payees of the note at the time of the transfer or notice thereof. Occupying the position which he did, it was easy for McConnell to have ascertained to whom these notes belonged. He could, without difficulty or inconvenience have applied to Saunderson, the maker, and ascertained the truth; and the exercise of a reasonable prudence and discretion would have put him upon such inquiry. Not having done so, he takes them at the hazard that the legal rights of the parties interested may be asserted.

An executor, administrator or guardian may dispose of the personal estate or assets of his testator, intestate or ward to a *bona fide* purchaser for a valuable consideration, and the contract will be obligatory unless the purchaser knows, or has good reason to suspect that the sale is made with a design to misapply the funds to the prejudice of those interested in the estate, and the purchaser is not bound to see to the proper application of the money. But if, in either case, such sale is made by an executor, administrator or guardian in payment of his own private debt, it is *ipso facto* a misapplication of such funds, and fraudulent and void as to those for whose benefit the estate or property is holden. This is the doctrine of all the recent authorities, and although the

case of *Sutherland* v. *Brush*, 7 Johns. Ch. R. 17, upon a superficial examination, might seem to question the latter proposition; yet, upon a careful investigation of the opinion of the Court, it will be found not to controvert the principle. In the case of *Field* v. *Scheiflin*, in the same book, p. 150, and in *Colt* v. *Lasnier*, 9 Cowen, 322, the whole question is reconsidered, all the English authorities reviewed and the principles herein before laid down distinctly and fully settled.

In the opinion of the Court the complainant in this case, so far as the same is submitted for our consideration, is entitled to no relief in a Court of Equity. Neither can the prayer of the defendants' answer or cross bill in this suit be granted. A defendant in a suit in chancery cannot make his answer a cross bill and under it obtain any specific decree in his favor. In this way, he cannot obtain affirmative relief, even although the parties may elect to consider the answer a cross bill. It is contrary to the established practice of the Courts of Chancery both in England and this country. If in this, or any other similar proceeding, the parties in interest desire the interposition of a Court of Equity in their behalf, they must file their bill and therein state specifically their causes of complaint.

The decree of the Circuit Court is reversed, and the cause remanded to the Circuit Court of Morgan county with directions to that Court to dismiss the complainant's bill, so far as the same relates to the notes and mortgage aforesaid received by the complainant from the said Hodson, and that, as to the residue of the said bill, the Court proceed to hear the same upon its merits, and render such decree as to justice and equity shall appertain. Each party to pay one half the costs in this Court.

*Decree reversed.*