## Fehr v. Campbell, Appellant.

*Promissory notes—Holder in due course—Good faith—Prior equities—Fraud—Acceptance by holder with notice of fraud in issue of note—Inquiry—Province of court and jury—Corporations —President—Act of May 16, 1901, P. L. 194.*

1. In an action on a promissory note by one claiming to be a holder in due course against the maker, after the maker has produced evidence to the effect that he had been defrauded into giving the paper, plaintiff is entitled to show that, despite the fraud on the maker, he himself was a holder in due course, and, therefore, not subject to the defense of prior equities.

2. If the plaintiff, in such case, is not a holder in due course, he holds the note subject to any defenses the maker may have against plaintiff's predecessors in title, since, as an ordinary purchaser, he would acquire only such rights as they possessed, and he would take those rights subject to any question or defense which might exist against them.

3. Under section 52 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, a person, claiming to be a holder in due course, must show he took the instrument in good faith and for value, and that, at the time he took it, he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

4. He who seeks the protection afforded a holder in due course must have dealt fairly and honestly in acquiring the instrument and in regard to the rights of all prior parties.

5. If when acquiring title, such person joins in an act of bad faith, in any material particular, towards one to whom the party with whom he is dealing owed good faith, he cannot be a holder in due course, and this is true no matter who so situated is immediately affected by his misconduct. It requires a thoroughly honest and fair transaction to constitute one a holder in due course.

6. Under sections 55 and 56 of the Act of 1901, negotiation of an instrument in bad faith, or fraudulently, constitutes a defect in the title of the negotiator, and if a person takes the note with notice that his transferrer is not acting honestly, such a person is not a holder in due course.

7. In order to be protected from the defense of prior equities, the holder must have taken the instrument "in the regular course of business," but he will not be deemed to have so taken it when the transfer was under such circumstances as to show that it was not a usual mercantile transaction, and that a business man of ordinary intelligence and capacity would have at once suspected the integrity of the paper itself, and the credit and standing of the party offering it.

8. In an action on a promissory note for $10,000 made by the defendant to himself, endorsed by him to a corporation and transferred by the president of the corporation to the plaintiff, the latter cannot recover where it is established that fraud was committed on the maker by the corporation at the time he made the note, that plaintiff paid for the note $6,000 under an agreement with the president of the corporation that $1,700 of the $4,000 balance was to be applied to the payment of a personal debt previously owed by the president to plaintiff, that the balance of the $4,000, when recovered, should be handed over to the president of the corporation, and returned by him to the corporation, and that plaintiff knew the corporation was insolvent at the time.

9. In such case, even if the president had valid claims against the company, his declaration to plaintiff that he would "fix up" the appropriation of the $1,700 to his personal debt, in a future settlement of amounts owed him by the company, will not aid plaintiff, since a corporate officer has no authority to adjust in any such manner claims which he may have against his own company.

10. The officer of a corporation has no authority to use the funds to pay his private obligations.

11. One who takes negotiable paper which appears to be, or which the taker knows to be, the property of a corporation, for the purpose of applying such paper to the personal use of the officers of the company, or of a third party, he is bound to inquire as to the authority of the officers to make such use of the paper, and, if no inquiry be made, the taker is held as though he had knowledge of all that inquiry would have revealed.

12. The question of the good faith of a holder of commercial paper in taking the paper is generally one of fact for the jury, but where the evidence is undisputed and conclusive, it is the court's duty to decide the point as a matter of law, and instruct the jury accordingly.

13. In an action on a promissory note by a holder against the maker, where the record of an equity suit, in which plaintiff was a party, when offered and accepted in evidence, shows a conclusive finding of fraud on the maker when the note was given, and the testimony of the plaintiff himself shows an illicit negotiation of the paper to him, there is no case for the jury, and binding instructions should be given for defendant.

*Appeals—Assignments of error—Two suits.*

14. Where a new trial has been granted, and on another trial a judgment is entered for plaintiff, defendant on an appeal from such judgment cannot assign as error the order granting the new trial.

15. If in such case defendant was aggrieved by the ruling, he should have appealed at the time the order was entered.

Argued January 24, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeal, No. 62, Jan. T., 1927, by defendant, from judgment of C. P. Berks Co., Oct. T., 1920, No. 91, on verdict for plaintiff, in case of Horace Fehr v. Lewis Campbell. Reversed.

Assumpsit by holder against maker of promissory note. Before SCHAEFFER, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $6,000. Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*Cyrus G. Derr,* with him *Walter B. Freed,* for appellant.—Fehr is chargeable with bad faith in taking the note: Worthington v. Ry., 195 Pa. 211.

*H. P. Keiser,* with him *H. F. Kantner,* for appellee.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 14, 1927:

Plaintiff Fehr, claiming to be a holder in due course, sued on a $10,000 promissory note, made by defendant Campbell to his own order and endorsed by him to the Franklin Operating Company, from whom Fehr acquired it for a valuable consideration; judgment was entered on a verdict for plaintiff and defendant has appealed.

At trial, it developed that defendant had previously sued plaintiff and others, in equity, claiming that he had been defrauded into giving the paper in question. The record of the equity suit was placed in evidence in the present action and showed a conclusive finding that the note had been obtained from Campbell by fraud of Solon A. Stein, the Franklin Operating Company and several others, but there was no finding connecting Fehr with such wrongdoing, as he acquired title to the note some time after the perpetration of the fraudulent acts found in the equity suit. The chancellor in that case ordered that the present action at law should be proceeded with for the purpose of ascertaining whether the plaintiff herein is a holder in due course, or whether, on the contrary, notwithstanding his nonparticipation in,

or lack of knowledge of, the fraud by which the note was originally procured, he took the instrument under circumstances which would cause him to hold it subject to Campbell's defenses against those from whom he, Fehr, had acquired title.

After proving the note, and its purchase from the Franklin Operating Company, through the president of that concern, Solon A. Stein, plaintiff rested, and defendant then offered in evidence the record in the equity suit, to show that he had been defrauded into giving the paper. Plaintiff then undertook in rebuttal, as was his duty under the law (Negotiable Instruments Act of 1901, P. L. 194, sec. 59; Second Nat. Bk. v. Hoffman, 229 Pa. 429, 432-3; Levy v. Gilligan, 244 Pa. 272, 276-7; Putnam v. Ensign Co., 272 Pa. 301, 305-6; Harponola Co. v. Wilson, 96 Vt. 427, 435-6, 120 Atl. 895, 898-9), to show that, despite the fraud which had been committed against defendant to obtain the note, he, plaintiff, was a holder in due course, and, therefore, not subject to the defense of prior equities.

Plaintiff testified that the note had been acquired by him from president Stein of the Franklin Operating Company for $6,000, on an agreement between them that the $4,000 above the $6,000 which he, plaintiff, gave for the paper, should be used by him as follows: $1,700 thereof to be appropriated to the payment of debts which Stein personally owed to plaintiff, and the balance of the $4,000 to be returned to Stein for the Franklin Company when the note should be paid. Plaintiff also testified that, in point of fact, immediately upon acquiring the instrument, he entered a credit on his books to Stein of $1,700, and thus cancelled the latter's personal debt. When asked whether Stein had said why this $1,700 should be taken out of the proceeds of a note admittedly owned by his corporation, plaintiff replied, "Why, he said the company owed him money that he had advanced, and then, with the money he would pay us, he could

square that up with the company, he could easily fix it up that way."

The vague testimony just quoted constitutes the only explanation on the record of plaintiff's action in entering into an agreement, when he acquired the note from the Franklin Company, through its president, that $1,700 of the property of that concern should be appropriated to the payment of Stein's personal obligations to him, Fehr. Again, the only explanation made by plaintiff as to why, in the present suit, he pressed to recover only $6,000, in place of the full $10,000 or face of the note, was that he had been advised by counsel to pursue that course "on account of the Franklin Operating Company being out of existence"; yet plaintiff said he knew that the company had creditors who, of necessity, would have an interest in the balance of the note over the $6,000 which he was pressing to recover. In point of fact, the company was insolvent, which fact, no doubt, proper inquiry would have disclosed. Plaintiff testified that he made no inquiries whatever of the Franklin Company or others, not even to ascertain whether its president had authority to sell paper owned by that concern.

At a prior trial of this action at law, the jury found in favor of defendant; the court below, however, set the verdict aside and granted a new trial. At the second trial, the one now under review, the issues, on which depended the essential finding that plaintiff was a holder in due course, were not submitted to the jury in a commendatory manner, but no assignments of error have been filed complaining of this, the sole assignments being (1) the refusal to enter judgment in defendant's favor n. o. v., and (2) the prior grant of a new trial. Of course, we cannot consider this second assignment at all, for, if defendant was aggrieved by the ruling therein called to our attention, he should have appealed at the time the order was entered.

As said before, when fraud in the inception of the note had been shown, plaintiff, in order to free himself

from the effect of this defense, was bound to prove that he was a holder in due course; hence the broad question involved under the first assignment of error is, whether, on the evidence at the trial, it was not the duty of the court below to have ruled, as a matter of law, that plaintiff had failed to sustain the burden thus cast upon him.

Though defendant intimates that plaintiff must have known of the circumstances attendant on the making of the note in suit, yet it is clear from the testimony that there could have been no ruling as a matter of law, or finding as a matter of fact, that Fehr had actual notice of the fraud originally practiced by others on Campbell, the maker; this being so, we have approached the problems before us for solution on the basis of plaintiff's ignorance of that wrongdoing, and on the theory that, if he is not entitled to the protection accorded to a holder in due course, the reason must be found elsewhere. Thus we are obliged to scrutinize the bargain whereby plaintiff acquired the note, for appellant points to this as the weak spot in his opponent's case, claiming that transaction to be so tainted by its intrinsic facts as to prevent anyone acquiring rights thereunder from occupying the favored position of a holder in due course. In short, defendant contends that plaintiff, by permitting the note to be negotiated to him under the circumstances shown by his own testimony, connived at and participated in what, unexplained as it is, bears the mark of fraudulent conduct, or lack of good faith, on the part of Stein toward his company and its creditors.

Aside from the evidence to be found on the note itself, it is clear beyond question from plaintiff's testimony that he knew the instrument was the property of the Franklin Operating Co., yet he made no attempt to show that Stein, the president of that concern, through whom he acquired the paper, had authority to transfer it to pay his personal indebtedness,—as Stein was doing, at least in part; therefore, it can well be found that plaintiff failed to overcome the prima facie lack of such

authority and the consequent presumption of commercial bad faith which adhered to the transaction.

Prima facie, an officer of a corporation has no authority to use its funds or securities to pay his private obligations or as collateral for his personal loans; and it is well settled that one who takes negotiable paper which appears to be, or which the taker knows to be, the property of a corporation, for the purpose of applying such paper to the personal use of one of the officers of such corporation, or of a third party, is bound to inquire as to the authority of the officer to make such use of the paper; and if no inquiry be made, the taker is held as though he had knowledge of all that inquiry would have revealed; finally, if it is not affirmatively shown that inquiry would have revealed facts sufficient to overcome the prima facie misappropriation, the presumption of bad faith remains: Garrard v. Pittsburgh & C. R. R. Co., 29 Pa. 154, 159; Schmitt v. Potter T. & T. Co., 61 Pa. Superior Ct. 301, 307-8; Odd Fellows Home v. Velenchick, 73 Pa. Superior Ct. 153, 155-6; Ward v. City Trust Co., 192 N. Y. 61, 70, 84 N. E. 585, 588; Fisk Rubber Co. v. Pinkey, 100 Wash. 220, 227-8, 170 Pac. 581, 583; Johnson-Kettell Co. v. Longley Co., 207 Mass. 52, 56, 92 N. E. 1035, 1037; Dennis Metal Co. v. Fidelity Tr. Co., 99 N. J. L. 365, 368, 123 Atl. 614, 615; McDowell v. Bauman, 189 Ky. 136, 138-9, 224 S. W. 641, 642.

Even if it had been shown as a matter of fact (which there was no attempt to do) that Stein did have valid claims against the Franklin Company (as he asserted), his vague declaration that he would "fix up" the use of the note for his personal debt, in a future settlement of amounts owed him by the corporation, would not aid plaintiff, since a corporate officer lacks authority to adjust in any such manner claims which he may hold against his own company: Schmitt v. Potter T. & T. Co., 61 Pa. Superior Ct. 301, 309.

By applying the above-stated legal principles to the facts in this case, it may be seen that plaintiff undoubt-

edly took the present note in a transaction whereby he sought to profit through dealings which, in the absence of an exculpatory explanation, must be stigmatized as forbidden by law. Having reached this point, we are still faced with the problem, Do the irregularities which figured in plaintiff's acquisition of the instrument subject him to the maker's defense of fraud in the original procurement of the note from the latter? To put the question in other words, Can plaintiff thus be prevented from occupying the position of a holder in due course? For, under established law, if plaintiff is not a holder in due course, he holds the note subject to any defenses the maker may have against Stein and the Franklin Co., plaintiff's sole predecessors in title, since, as an ordinary purchaser, he would acquire only such rights as they possessed, and he would take those rights subject to any equities or defenses which might exist against them. Thus appears the importance of determining whether plaintiff is a holder in due course or only an ordinary purchaser, and in this regard the situation is somewhat unusual, in that the circumstances upon which plaintiff's legal status hinge concern dealings between him and others who are not parties to the present suit, and these circumstances are distinct from the facts of the original fraud, upon which defendant resists payment of the note; therein lies the difference between the case at bar and the majority of those that have come before the courts, and these distinguishing features must be kept in mind as we proceed.

Section 52 of the Negotiable Instruments Law, Act of 1901, P. L. 194, provides that "A holder in due course is a holder who has taken the instrument under the following conditions:......(3) That he took it in good faith and for value; (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or of defect in the title of the person negotiating it." Did plaintiff take this note in what the law would consider good faith? Again, Did Plaintiff not

have notice of a defect in the title of Stein, who, in negotiating the paper to him, plaintiff, treated $1,700 of the obligation as though it belonged to him, Stein, personally, rather than to his corporation?

The freedom from the defense of prior equities afforded to a holder in due course is an extraordinary protection, which, although having its origin in the law merchant, is closely akin to similar protection given in other types of cases by courts of equity; and running through all the authorities dealing with holders in due course we find the principle, not always stated, perhaps, that he who seeks the protection given one in that position must have dealt fairly and honestly in acquiring the instrument in controversy and in regard to the rights of all prior parties; this is the kind of good faith which the law demands, and the principle is closely analogous to the equitable doctrine of clean hands. As said in Goodman v. Simonds, 20 How. (U. S.) 343, 366, "Everyone must conduct himself honestly in respect to antecedent parties, when he takes negotiable paper, in order to acquire a title which will shield him against prior equities." Again, in Adams v. Ashman, 203 Pa. 536, 542, we find the following: "The manner in which the note was handled......did not exhibit on the part of the plaintiff that *entire good faith* which equity exacts of one who would deprive a defendant of the right to set up the true condition of affairs as a defense." In Johnson-Kettell Co. v. Longley Co., 207 Mass. 52, 56, 92 N. E. 1035, 1037, the court said: "Where......the transaction ......on [its] face......is an appropriation of the corporation's money to the payment of the individual's debt [it] is bad unless shown to be good; since the transaction is bad unless shown to be good [in the absence of proof as to the validity of the transaction], no question of purchase in good faith can arise." And in McDowell v. Bauman, 189 Ky. 136, 224 S. W. 641, 642, is the following: "McDowell cannot be regarded as a purchaser in good faith, for, when his attorney......received the check,

the check itself was notice of the fact that it was drawn on the funds of the corporation to discharge the obligation of a third party." See also Pelton v. Spider Lake Co., 132 Wis. 219, 112 N. W. 29; Kenyon Co. v. Nat. D. Bk., 140 Ky. 133, 130 S. W. 965. These cases, and others which we shall mention, all show, if nothing more, that, to constitute the taker a holder in due course, the paper in question must be acquired, by one so claiming, in a manner entirely free from unlawful bargaining, particularly of the character shown by the evidence now before us.

Let us turn to decisions that deal with the taking of paper under circumstances most nearly approximating those in the case at bar. In Ward v. City Trust Co., 192 N. Y. 61, 69, 73, 84 N. E. 585, 587, 589, the check of a third party, payable to the order of a manufacturing corporation, had been endorsed by the president and general manager of the latter and delivered to the trust company defendant, in payment of a personal loan obtained by such president for himself. In a suit, by the assignee for creditors of the corporation, against the trust company, to recover the amount of the check, the New York Court of Appeals said that "the form of the check in question was a notice to the trust company that Umsted [president of the manufacturing corporation] was using the property of the corporation...... to pay the personal debt of himself......in apparent violation of its rights......The effect of such notice was to put the trust company upon inquiry to see whether it was about to accept money from one to whom it did not belong......The presumption arising from the face of the check was that it belonged to the [corporation], and its president had no right to use it to pay his personal debt." The court further said, "While Umsted [the president] owned all the stock [of the corporation], still the rights of the creditors remained, even if the corporation and stockholders were ready to give away every right within their power." Then, again, "It was not enough

for the trust company to part with value,......it was bound to act in good faith in order to get good title......; bad faith in taking commercial paper does not necessarily involve furtive motives, for it exists when the purchaser has notice of facts which, if unexplained, would show that he was taking *the property of one who......* *owed him nothing in payment of a claim that he held* *against someone else."* Applying these principles to the present case, we find that Fehr took $1,700 of the property of the Franklin Company, which owed him nothing, in payment of claims that he held against someone else,— the president of that concern; and, as we have seen in the Ward Case, this state of affairs has been held to constitute such bad faith as would prevent one so placing himself from occupying the favored position of a holder in due course, or, as said in that opinion, *"In a commercial sense [the person acquiring the paper] acted in bad* *faith,* and [under such circumstances] the law will withhold from him the protection that it would otherwise extend," i. e., the protection extended to a holder in due course. Of course, in the Ward Case the president of the corporation received personal credit for the whole face value of the paper in controversy, while in the present case he received personal credit for only a portion of the face value of the paper; but his improper conduct, knowingly participated in by Fehr, the plaintiff, affected the whole transaction with a taint of bad faith just as much as though Stein had been given personal credit for the full face value of the note.

In Garrard v. Pittsburgh & C. R. R. Co., 29 Pa. 154, 158, we said, "A purchaser [of a bond] with notice that [its] sale is a breach of trust, or a fraud upon the rights of the real owner, is particeps criminis with the fraudulent vendor, and his purchase cannot protect him against the owner, because such a purchase is not bona fide." The same principle applies in the case now before us. Here plaintiff purchased the paper in controversy with notice that, at least as to $1,700 thereof, the sale was

a breach of trust toward the apparent owner of the note and its creditors; to this extent he, as purchaser, was particeps criminis with the fraudulent vendor. This prevents plaintiff from being a holder in due course, and hence his purchase cannot protect him against the real owner of the note, who, in this case, owing to the fraud that had been committed in its procurement, was the maker of the instrument, the present defendant. The Franklin Company, though apparently the owner, really held title to the note as trustee ex maleficio for Campbell; but this cannot in any way accrue to the benefit of plaintiff, who joined in the wrongful negotiation of the note to himself on the basis of the Franklin Company being the real owner of the paper, and who now claims to have had no knowledge of any underlying interest possessed by Campbell. Plaintiff's attitude was one of bad faith, and it cannot matter, so far as his standing as a holder in due course is concerned, whether the equitable title to the note was in the Franklin Company, the apparent owner, or in another.

In McConnell v. Hodson, 7 Ill. 640, 648, it was adjudged that one who took an assignment of unendorsed notes payable to the administratrix of an estate, as security for a personal debt of the husband of such administratrix, could not be a holder in due course. In that instance the decedent's estate had been settled, the wife was an heir, the husband had possession of the notes and actually delivered them to the purchaser, and there was no notice of an outstanding interest except that which appeared on the face of the instruments themselves. The maker of the notes, one Saunderson, was named as a defendant, but the real contest was between the plaintiff, McConnell, who held them as collateral, and the other defendant, Hodson, who had delivered them to McConnell to secure his, Hodson's, personal indebtedness. The following statement in the opinion, as to the effect of knowingly purchasing commercial paper from one who holds it in a fiduciary capacity, is

pertinent here: "If....such a sale is made by [a fiduciary] in payment of his own private debt, it is ipso facto a misapplication of such funds, and fraudulent and void as to those for whose benefit the estate or property is holden."

In Fisk Rubber Co. v. Pinkey, 100 Wash. 220, 227-8, 170 Pac. 581, 583, Pinkey, the defendant, had given commercial paper to a land company in a transaction which proved to be fraudulent toward him. The president of the land company used one of these notes in the purchase of an automobile for himself, personally. The note was pledged as collateral by the automobile dealer, and finally came into the hands of the plaintiff company as collateral, and the latter brought action thereon against the maker. Recovery was denied, the court saying that the president's endorsement of the note made it the promise of the corporation to pay the face thereof "as much as if [the president] had executed the note of the corporation payable to himself and endorsed it in the same way." Then the opinion writer adds: "No person can be a bona fide holder of a promissory note executed by an officer in the name of the corporation, and payable to the officer executing it, as an individual. Where an officer of a corporation makes its commercial paper payable to his own order, signs it as such officer, and transfers it in payment of an individual debt, it is held that the transferee is not a bona fide purchaser thereof without notice, since the facts appearing on the face of the paper are sufficient to put him on inquiry as to its ownership: 3 Ruling Case Law 1085." The court stigmatized the transaction before it as "out of the ordinary course of business," saying that it "imports unfairness on its face" and adding that, when paper is so acquired, "unless the authority of the officer is made to appear by affirmative proofs, or it is shown that the corporation has acquiesced in or ratified the act, the paper is subject to defenses, although in the hands of one who took it before maturity

and for value," meaning, necessarily, defenses set up by the maker of the note, for, in the case under discussion, as in the present one, the maker was the defendant at bar. The court further said that the maker of the note was entitled to set up the original fraud as a defense, because the transaction in which the holder took the instrument cast a "shadow" on it, and, under the circumstances, the holder "could not in good faith" accept the note with this shadow upon it. Then these significant words appear: "While the courts are careful to guard the interest of commerce by protecting the negotiation of commercial paper, they are also careful to guard against fraud by defeating titles taken in bad faith, or with knowledge, actual or implied, which amounts to bad faith, when regarded from a commercial standpoint."

The case last mentioned is in most of its essential points much like the one now before us on appeal. In both of them, the circumstances on which plaintiff's status as a holder in due course hinged concerned a transaction between plaintiff, or those under whom he claimed, and the president of a corporation, who in the transaction in question had acted illegally toward his company, neither the corporation nor its president being parties to the suit before the court and the circumstances under inquiry being distinct from the circumstances of the original fraud upon which the defendant resisted payment of the note in suit. It is but fair to call attention to the fact, however, that in most of the cases previously discussed in this opinion, the act of bad faith which prevented the owner from being a holder in due course was toward a party to the suit then before the court, and not, as here, toward an outside party,—the corporation which held title to the note when it was negotiated to plaintiff. But we are of opinion that this difference has no bearing on the principle involved, since all the cases on the subject, no matter at what point they touch it, indicate

the demand for good faith on the part of one who takes a negotiable instrument as a requirement of general good faith; if such a person, when acquiring title, acts in bad faith in any material particular toward one to whom the party he is dealing with owed good faith, he cannot be a holder in due course, and this is true no matter who, so situated, is immediately affected by his misconduct.  When we apply this principle to the case at bar, plaintiff, having shown his own participation in the illegal conduct of Stein, the president of the corporation from whom he took the note in suit, convicts himself of bad faith, and consequently cannot be a holder in due course.

Thus far we have considered the case before us on general principles and under the "good faith" requirement of section 52 of the Negotiable Instruments Act; this section demands also that a holder in due course shall have taken the instrument without notice of any infirmity in the paper itself or defect in the title of the person negotiating it; then sections 55 and 56 define such defects and notice.  Section 55 provides that "The title of a person who negotiates an instrument is defective, within the meaning of this act, when he ......negotiates it in breach of faith or under such circumstances as amount to a fraud."  Section 56 provides that, "To constitute notice of infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Application of the last-mentioned sections of the act to the present case leads to the same result as is reached under the "good faith" clause of section 52.  However illogical it may seem to say that one's title to a commercial instrument may be made defective by reason of acts done by himself in transferring it to another, that is exactly what section 55 declares to be the law; ne-

gotiation of an instrument in bad faith, or fradulently, constitutes a defect in the title of the negotiator. Even though the terms used may seem incongruous, the substantial result is righteous. The term "defect of title" is employed only in connection with the establishment of the status of holders in the course, and as so used serves a desired and proper purpose. The object of the latter part of section 55, when taken in connection with section 56, is to prevent one from becoming a holder in due course who takes an instrument with notice that his transferrer is not acting honestly. It is the same object as is found in the "good faith" clause of section 52, but viewed from a somewhat different angle; that clause has regard to the attitude of the taker of the instrument; while section 55 emphasizes rather the honesty of the negotiator as brought to the notice of the taker. The object of the whole is, however, a single one,—to require a thoroughly honest and fair transaction to constitute one a holder in due course.

That the sale of the note to plaintiff, Fehr, partly in payment of the personal debt of Stein was a negotiation in breach of good faith toward the corporation which held title to the instrument and its creditors, if, indeed, it was not a fraud upon such rights as they may have possessed, needs no further argument. At the time of the transaction between Stein (the president of the corporation) and Fehr (plaintiff) there had been no attack by Campbell (maker and present defendant) on the validity of the note and no adjudication of its invalidity; hence it constituted an apparent valuable asset of Stein's company, and the record indicates the insolvency of that concern at the time in question. The company received $6,000 from plaintiff for this $10,000 note, but Stein transferred the entire instrument to Fehr, thus putting out of the control of his company the recovery of the balance of $4,000, and making it possible for Fehr, if it suited or tended to advance his personal interests, to remit, as he in fact afterwards did,

that amount in pressing suit on the note. Fehr must have known that Stein acted wrongly when, in this manner, he put it within the power of another to prejudice possible rights of his corporation and its creditors. Again, plaintiff took the note under circumstances which in law charge him with knowledge of, and participation in, a direct act of bad faith on the part of Stein, for he, Fehr, actually assisted Stein to appropriate $1,700 of the note as his own property, by enabling him to use the paper to that extent in payment of his personal debts. Therefore, under section 55 and 56 of the Negotiable Instruments Act, Fehr accepted the instrument in suit with knowledge of a defect in the title of a person who negotiated it to him, and is barred on that ground from claiming the rights of a holder in due course. We may add at this point that plaintiff cannot rid the transaction under which he acquired title of the taint of illicit dealing which characterizes it, by the simple expedient of failing to press for the recovery of the $1,700.

In many cases decided prior to the passage of the Negotiable Instruments Law, the requirement is found that, in order to be protected from the defense of prior equities, the holder must have taken the instrument "in the regular course of business": Kuhns v. Gettysburg N. Bk., 68 Pa. 445, 448; Roberts v. Hall, 37 Conn. 205, 211; Pennington County Bank v. First State Bank, 110 Minn. 263, 266, 125 N. W. 119, 121; McConnell v. Hodson, 7 Ill. 640, 648. In discussing this phrase, "the regular course of business," the court, in Roberts v. Hall, supra, said (p. 212) that a more definite idea of its meaning as applied to a particular case might be gained by stating the questions, "Is negotiable paper ordinarily used in the way and manner in which [the paper now before us] was used? Would a business man of ordinary intelligence and capacity receive commercial paper, when offered for the purpose for which this [paper] was transferred, as money, and, upon its credit, part with his

property? Or would he at once suspect the integrity of the paper itself and the credit and standing of the party offering it?" and the court determined that, "A correct answer to these questions must settle conclusively the mercantile character of the [ordinary business] transaction involving the transfer of commercial paper." The Negotiable Instruments Act was intended to codify the existing law, and, since it contains nothing which conflicts with the rule established by the cases dealt with in this paragraph, it follows that the tests therein discussed are applicable to cases arising either before or after the statute. In the present instance, it cannot be claimed for a minute that any business man, of ordinary intelligence and capacity, in Fehr's position, would have failed to suspect Stein and the paper he was endeavoring to sell, when the latter offered him this $10,000 note (acknowledged at the time as belonging to his corporation) under the circumstances of this case, which, no matter how liberally regarded, cannot properly be said to show a usual mercantile transaction or one that would be apt to occur "in the regular course of business"; on the contrary, the deal by which Fehr took title to the note in suit was, on its face, so out of the ordinary course of business and so impregnated with commercial bad faith as, in the absence of explanation, to deprive plaintiff of the rights belonging to a holder in due course, and we are brought to this conclusion by applying either the old common law tests or the language used in the act of assembly.

The question of the good faith of a holder of commercial paper is generally one of fact for the jury, but where the evidence is undisputed and conclusive, it is the court's duty to decide the point as a matter of law and instruct the jury accordingly; Howard N. Bank v. Wilson, 96 Vt. 438, 453, 120 Atl. 889, 894. Here, the conclusion that plaintiff did not acquire title to the note in suit under such circumstances of good faith as to constitute him a holder in due course, is based on evi-

dence given by Fehr, himself, upon whom rested the
burden of proving that he was a holder in due course;
not only did he fail to do this, but from his own testi-
mony it was affirmatively shown that in law he could
not occupy that favored position. This being the case,
since the maker's defense was good, and conclusive
against anyone but a holder in due course, defendant
was entitled to have a verdict directed in his favor. The
proofs that made a conclusive case for defendant con-
sisted of the record in the equity suit (showing, as
against plaintiff, since he was a party to that proceed-
ing, an irrefutable adjudication of the fraud by which
the note had been procured from defendant) and un-
contradicted testimony, from plaintiff himself, which
proved the illicit negotiation of the paper to him; hence
there was no issue to go to the jury,—simply a question
of law for the court as to the legal effect of Stein's and
the plaintiff's illegal and improper conduct. See
Schmitt v. Potter T. & T. Co., 61 Pa. Superior Ct. 301,
307, 308, 311, hereinbefore referred to, where the holder
of commercial paper, negotiated to him by an officer
of a corporation in payment of the latter's personal in-
debtedness, was denied the rights of a holder in due
course, binding instructions having been given against
him at trial, and where many of the points now before
us are discussed in the opinion of the appellate court,
affirming a judgment entered on a verdict in accordance
with such instructions. In the case at bar, as in the
Schmitt Case, the facts and the law called for binding
instructions against the holder of the paper in suit,
and the court below erred when it refused defendant's
request to that effect.

The first assignment is sustained and judgment is
entered in favor of defendant n. o. v.