LOCKE COTTON MILLS COMPANY, A CORPORATION, V. PATE COTTON COMPANY, A CORPORATION.

(Filed 24 May, 1950.)

**1. Bills and Notes § 18—**

In order for the transferee of warehouse receipts to be a *bona fide* holder within the meaning of G.S. 27-51 it is necessary not only that he acquire same before maturity for value and without notice of fraud but also that he take same in good faith, which means honestly and without knowledge of facts which would negative good faith, particularly where he knows his transferer occupied a relationship of trust.  G.S. 27-2.

**2. Bills and Notes § 35—**

An instruction to the effect that the burden is upon the transferee to show that he took the warehouse receipts in controversy for value and without notice of any defect, must be held for reversible error for omitting the element of good faith, notwithstanding a prior correct instruction, when the question of good faith is the focal point of the controversy upon plaintiff's evidence that the transferer was its agent and transferred the receipts in discharge of his personal liability to the transferee on an unpaid check.

APPEAL by plaintiff from *Gwyn, J.,* October Term, 1949, of SCOTLAND. New trial.

Suit to recover warehouse receipts for 100 bales of cotton alleged to have been fraudulently obtained from the plaintiff, and now held by the defendant.

Issues were submitted to the jury and answered as follows:

"1. Were the warehouse receipts in controversy in this action owned by the plaintiff prior to the time that they came into the possession of the defendant?  Answer: Yes.

"2. If so, were said warehouse receipts wrongfully and fraudulently converted to their own use by Dillon Cotton Company or P. G. Wright? Answer: Yes.

"3. If so, did the defendant Pate Cotton Company acquire said warehouse receipts in due course for a valuable consideration and without notice of any defect in the title of the Dillon Cotton Company or P. G. Wright?  Answer: Yes."

From judgment on the verdict plaintiff appealed.

*Brooks, McLendon, Brim & Holderness and Hartsell & Hartsell for plaintiff, appellant.*

*Varser, McIntyre & Henry for defendant, appellee.*

DEVIN, J.   The first two issues, which were not seriously controverted, established the fact that warehouse receipts belonging to the plaintiff and

representing some $15,000 worth of cotton had been fraudulently converted by plaintiff's agent, and thereafter transferred to the defendant in discharge of the agent's personal liability to the defendant on an unpaid check. The controversy was fought out on the third issue whether the defendant acquired the warehouse receipts for value in good faith without notice of the defective title of the transferer, as claimed by defendant.

The warehouse receipts, the subject of this litigation, were negotiable (G.S. 27-10), and the rights of a *bona fide* holder were protected by the following statute, G.S. 27-51: "The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner of the receipt was deprived of the possession of the same by loss, theft, fraud, accident, mistake, duress, or conversion, if the person to whom the receipt was negotiated, or a person to whom the receipt was subsequently negotiated, paid value therefor, in good faith without notice of the breach of duty, or loss, theft, fraud, accident, mistake, or duress or conversion."

In charging the jury on the third issue the court used this language: "So the plaintiff says and contends that you should find with the plaintiff upon this issue and that you should not be satisfied from the evidence and by its greater weight that the defendant took the receipts for value, in good faith, without knowledge of its defect or infirmity or without knowledge of such facts and circumstances under which the taking would be in good faith, and that you should answer the issue No. It is a matter for you to say what the truth is. Gentlemen, upon that third issue you are instructed that if the defendant has satisfied you from the evidence and by the greater weight thereof that it took the warehouse receipts for value, as that term has been explained, and without notice of any defect in the title of Dillon Cotton Company or P. G. Wright, then it would be your duty to answer that issue, the third issue, Yes."

Plaintiff noted exception to the portion of the charge above quoted, for that after properly stating the plaintiff's contention that the burden was on the defendant to show that it took the warehouse receipts for value, in good faith, without knowledge of the defective title of the person from whom acquired, or of such facts and circumstances as would negative good faith, the court immediately followed this by a positive direction to the jury that they should answer the issue in favor of the defendant if they found it took the warehouse receipts "for value and without notice of any defect in the title" of the person from whom acquired.

The ground of plaintiff's exception is that the court thus relieved the defendant of the burden prescribed by the statute of showing that it acted in good faith as well as without notice of the fraud.

The statute (G.S. 27-2) declares that a thing is done in good faith within the meaning of the Uniform Warehouse Receipts Act "when it is in fact done honestly, whether it be done negligently or not." And in 8 American Jurisprudence, 118, we find the rule stated as follows: "To be a holder in due course under the Uniform Act, or its equivalent under the law merchant, it is necessary not only that a holder give value for an instrument before its maturity, but also that he take it in good faith, without notice of any infirmity in the instrument or defect in the title of the person negotiating it at the time of such taking or knowledge of such facts that his action in taking the instrument amounts to bad faith. This means that at the time he takes it, he acts honestly and fairly under the facts and circumstances within his knowledge with respect to the rights of all prior parties, particularly those with whom he knows his transferer occupied a relationship of trust, and in a manner free from the taint of any illegality." See also *Fehr v. Campbell,* 288 Pa. 549, 52 A.L.R. 506, where the meaning of "in good faith" in this connection is discussed. It may be noted that while these words do not appear in the original Act, Public Laws 1917, C. 317 (C.S. 4087), they were inserted in the recodification of the statute in General Statutes, sec. 27-51, in defining what was essential to bring the holder of a warehouse receipt negotiated in fraud within the protection afforded a *bona fide* holder.

In the light of the circumstances attending the acquisition of the warehouse receipts by the defendant in this case, and the plaintiff's contention thereon that the defendant had knowledge of such facts that its taking them in settlement for the transferrer's unpaid check was not in good faith, we think the omission by the court in his instructions to the jury of the words contained in the statute was error. Here was the focal point of the controversy. The decision turned upon the factors of the defendant's knowledge and good faith in taking and holding warehouse receipts bearing plaintiff's name and of which the plaintiff had been wrongfully deprived. Ordinarily immaterial and inconsequential omissions in an otherwise properly stated charge to the jury will not warrant a new trial. And it is true the court in the first part of his charge in stating generally the principles of law applicable to the transfer of fraudulently acquired instruments, used the words "in good faith," and charged that the holder would not be protected if he took the instrument with knowledge of such facts and circumstances that his taking would amount to bad faith. But later after stating the evidence and contentions of the parties on the third issue at some length, in his final instruction on this vital issue, the court omitted this statutory phrase which tended to lessen the burden which the law imposed upon the defendant's affirmative defense. We think this may have influenced the verdict, and that there should be another hearing. We observe also that when the jury later in the course

of their deliberations requested that the court recapitulate his instructions on the third issue, the charge above quoted was repeated *in totidem verbis.*

For the error pointed out there must be a

New trial.