## Nair v. Marywood College

*Michael H. Roth*, for plaintiffs.
*Joseph A. O'Brien*, for defendants.

GARDNER, *44th Judicial District, specially presiding*, June 16, 1988 — This matter arises as a result of a motion for summary judgment filed by plaintiffs.

On March 17, 1987 we ordered a separate trial of the counts of plaintiffs' complaint alleging breach of contract, and it is to this matter that the instant motion is addressed.

Further account of the history of this case (other than to set this disposition in perspective), in our judgment, is unnecessary, as a result of the simplic-

ity of the issues presented. In fact, counsel for the parties have each presented, in their briefs, exhaustive recitals of the tortuous course of this litigation.

Pennsylvania Rule of Civil Procedure 1035(b) provides that the judgment sought shall be rendered "[I]f . . . there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Plaintiff, Dr. Nair, on March 22, 1985, entered an agreement with the defendant, Marywood College, which included, inter alia, the following provision:

"(2) The policies and practices listed in the Faculty Manual are agreed upon by the parties hereto."

The Faculty Manual contained "Procedural Recommendations of The American Association of University Professors Regarding Termination of Faculty Members." These "recommendations," asserted as mandatory contractual provisions by plaintiffs, are alleged to have been violated in a number of ways by the procedures employed by the college, which resulted in Dr. Nair's termination as a tenured professor.

Little, if any, dispute exists between the parties as to what the college did in the termination proceedings, and there were some deviations from the American Association of University Professors' "recommendations." However, we do not conclude that the college's actions constituted a violation of Dr. Nair's contract of employment as a matter of law so as to entitle plaintiffs to a judgment.

Our analysis of the court's function at this juncture involves the construction of the words (and their effect) of the contract asserted by plaintiffs as the obligation of the college. *4 Williston, Contracts*, section 616 (3d. ed. 1961). At the outset, we are of the opinion that the reference to the Faculty Manual in sub-paragraph 2 of the employment contract

was intended by the parties to incorporate the manual's provisions by reference. Counsel for the parties agree.

An examination of each paragraph of the American Association of University Professors' procedural recommendations contractually incorporated reveals language couched in precatory terms:

(1) *"Preliminary proceedings concerning the fitness of a faculty member"*

"Should ordinarily discuss the matter . . ."

"May be terminated by mutual consent . . ."

"Should informally inquire into the situation to effect an adjustment . . ."

"Whether . . . formal proceedings . . . should be instituted."

"Should be begun . . ."

"Action should be commenced . . ."

"Should then be jointly formulated . . ."

"Should formulate . . ."

(2) *"Commencement of formal proceedings"*

"The formal proceeding should be commenced . . ."

"Sufficient time should be allowed . . . to prepare his defense."

"The faculty member should be informed . . ."

"The faculty member should state in reply . . . and should answer . . ."

(3) *"Suspension of the faculty member"*

"Suspension should be with pay."

(4) *"Hearing Committee"*

"The committee . . . should either be . . ."

"The choice of members . . . should be . . ."

"The committee should elect . . ."

(5) *"Committee proceedings"*

"The committee should proceed . . ."

"The committee should consider . . ."

"[t]he hearing should go forward . . ."

"The committee should exercise its judgment . . ."

"[s]hould be received."

"The president should have the option . . ."

"He may designate . . ."

"Committee should determine . . ."

"(The committee) should normally conduct the questioning . . ."

"The faculty member should have the option . . ."

"The faculty member should have the additional procedural rights . . ."

"(The faculty member) [s]hould have the aid . . ."

"The faculty member . . . should have the right . . ."

"The faculty member . . . should have the opportunity . . ."

"The identify of the witness says . . . should . . . be disclosed . . ."

"All of the evidence should be duly recorded."

"[i]t should not be necessary to follow formal rules of court procedure."

(6) *Consideration by hearing committee*

"The committee should reach its decision in conference, on the basis of the hearing."

"[i]t should give opportunity to the faculty member or his counsel . . . to argue orally . . ."

"If written briefs would be helpful, the committee may request them."

"Committee may proceed to decision promptly . . ."

"It should make explicit findings."

"Publicity . . . may properly be withheld . . ."

"The president and the faculty member should be notified . . . and should be given a copy of the record . . ."

"Any release . . . should be made through the president's office."

(7) *"Consideration by governing body"*

"The president should transmit . . ."

"Acceptance of the committee's decision would normally be expected."

"[r]eview should be based on the record . . ."

"The decision . . . should be sustained or . . . returned . . ."

"The committee should reconsider . . ."

"It should frame its decision . . ."

"Only after study . . . should the governing body make a final decision . . ."

(8) *"Publicity"*

"[p]ublic statements . . . should be avoided."

"Announcement of the final decision should include . . ."

The introductory comments to the statement on procedural standards in faculty dismissal proceedings of the American Association of University Professors, attached by defense counsel to his brief, provides:

"This statement deals with procedural standards. Those recommended are not intended to establish a norm . . . but are presented rather as a guide . . ."

Our research has revealed no Pennsylvania case which deals with the American Association of University Professors' recommendations in a relevant situation to the instant matter, but in *Cusumano vs. Ratchford*, the U.S. Court of Appeals, 8th Circuit, 507 F.2d 980 (1974), dealt with a case in which a University of Missouri instructor and an associate professor, each of whom had received notice that he would not be rehired, sought reinstatement with tenure. In that case, plaintiffs sought support on the Statement of Principles adopted by the American Association of University Professors which had been adopted by the university as part of its regula-

tions. In rejecting this argument, the court of appeals stated:

"Plaintiffs would read 'should' in the quoted sentence as 'must' and conclude therefrom that since notices were not given (as they 'must' have been) during 'the penultimate year of their maximum probationary periods in the school year 1969-1970' they had a 'a property right . . .'

"The Statement of Principles, it is clear, was not intended by its promulgators to be a binding legal document. The procedures of the disputed section 2 are stated to represent 'acceptable', not obligatory, 'academic practice.'

"The function of the principles, it has been said, is to serve as 'merely norms by which the profession can judge academic practices which have become the subject of complaints.'

"Section 2 of the Statment of Principles, we conclude, is not mandatory, it is not inconsistent with the university's regulations, and furnishes no support for plaintiffs' assertions of de facto tenure."

In the instant matter, we conclude that the guidelines promulgated by the American Association of University Professors and made part of the Marywood faculty manual were not intended by the association to be binding obligations and that such were not mandatory on defendant. We do not believe, in the words of Judge Talbot Smith, writing in *Cusumano, supra,* that words of "admonition" as found in the guidelines may be construed by us to possess the "precision of a contract."

Plaintiffs also contend that defendant college acted in "bad faith" in the dismissal of Dr. Nair, arguing that the faculty committees, administration of and advisers to the college, acted callously in numerous instances in the termination proceedings.

Plaintiffs' counsel candidly states that "Pennsylvania courts have not explicitly recognized a general obligation of good faith performance in every contract. . . ." With this defense counsel agrees and attempts to bolster this concurrence by distinguishing authorities cited by plaintiffs.

However, defense counsel does argue that even if Pennsylvania has adopted or will adopt an implied covenant of good faith performance in every contract, defendant college and its representatives have so acted instantly, but that such a determination raises factual issues. With this we agree.

We believe we are supported in our opinion by the analogous approach to determination of "good faith" in negotiable instruments law wherein, in *Fehr vs. Campbell*, 288 Pa. 549, 136 Atl. 860 (1927), the Supreme Court of Pennsylvania held that the question of good faith of a holder of commercial paper is generally one of fact for the jury unless the evidence is undisputed and conclusive. See also, *Exxon Corporation vs. Wilson*, 495 Pa. 553, 434 A.2d 1229 (1981).

Instantly, the evidence is anything but undisputed.

Having found that the presence or absence of good faith in defendant's dealings with Dr. Nair constitutes an issue of fact which we further find to be material and substantial and having further found no basis to give judgment to plaintiffs as a matter of law, summary judgment may not be granted.

## ORDER

And now, June 16, 1988, for the reasons set forth in the opinion of even date filed herewith, it is ordered that plaintiffs' motion for summary judgment be and the same is hereby denied.