## International Finance Corporation *v.* Philadelphia Wholesale Drug Co., Appellant.

Argued April 21, 1933.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*Robert T. McCracken,* of *Montgomery & McCracken,* with him *Franklin F. Trainer, Jr., John M. Dredger, Jr.,* and *John F. Headly,* for appellant.—The acceptance was qualified and conditional: International F. Corp. v. Calvert Drug Co., 144 Md. 303; Westlake M. Finance Corp. v. Merritt, 204 Calif. 673.

It has been held that where the words "as per contract" appear upon the face of a negotiable instrument, inquiry should be made as to the intention of the parties to determine whether or not the additional words were intended to state a condition or merely referred to the origin of the transaction or to the consideration on account of which the instrument was given: Panati v. Booth, 95 Pa. Superior Ct. 238; Hazeltine v. Dunbar, 62 Wis. 162; Gulf Export Co. v. Bank, 203 Ala. 528; Crane Co. v. Druid Realty Co., 137 Md. 324.

*Jay B. Leopold,* with him *Hugh H. Obear,* of *Douglas, Obear & Douglas, Tyree Dillard, Jr.,* and *Duane, Morris & Heckscher,* for appellee.—The acceptances are unconditional and the instruments negotiable: International Finance Co. v. Drug Co., 282 Fed. 920; Nat. Bank of Newbury v. Wentworth, 218 Mass. 30; Taylor v. Curry, 109 Mass. 36; Doyle v. Cosidine, 195 Ill. App. 311; Continental Bank & Trust Co. v. Publishing Co., 142 La. 209; Utah Lake I. Co. v. Allen, 64 Utah 511.

OPINION BY MR. JUSTICE KEPHART, May 22, 1933:

The Philadelphia Wholesale Drug Company on May 11, 1921, accepted for payment three trade acceptances drawn upon it by Reolo, Inc., payable four months after date. The acceptances read as follows: "Accepted for payment as per Reolo contract for amount and date shown hereon." When the acceptances were made, two agreements were entered into between the parties call-

ing for the performance of certain acts by Reolo, Inc., the drawer, in consideration of the acceptances. Before their maturity appellee purchased them for value and without notice of any defenses thereto. At the same time it obtained from Reolo, Inc., a certified copy of the contract between it and appellant. This copy omitted a provision requiring Reolo, Inc., to renew the acceptances at maturity for four months, if at that time shipments of all goods covered by the acceptances had not been made to the Drug Company, the renewals to be for the value of unsold portions of such goods. This fraud was not discovered until seven days after the drafts were purchased.

When the drafts were presented at maturity for payment at the bank named therein, it was refused because Reolo, Inc., had violated its contract by failing to perform its provisions. Appellee then brought suit. Thereafter, the parties submitted a case stated, on which judgment was entered against the Drug Company, from which it took this appeal.

Where a draft is "accepted for payment as per contract" between drawer and acceptor, is the draft in a holder's hands subject to a defense under the contract which the acceptor has against the drawer? Did the writing give notice or carry with it a duty to inquire beyond the instrument? If it did, the acceptance was conditional and the instrument in the hands of any holder would be subject to any defense the acceptor had against the drawer. The Negotiable Instrument Act of May 15, 1901, P. L. 162, furnishes principles of law and significant definitions which aid in determining the effect of the expression now under consideration.

Section 1 of the act provides that an instrument to be negotiable "must contain an unconditional promise or order to pay a sum certain in money." This requirement (section 1) applies to all instruments which claim negotiability.

Section 3 reads:

"An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with:......(2) A statement of the transaction which gives rise to the instrument."

Section 139, treating of bills of exchange and acceptances, reads:

"An acceptance is either general or qualified. A general acceptance assents without qualification to the order of the drawer. A qualified acceptance in express terms varies the effect of the bill as drawn."

Section 141 defines a qualified acceptance by saying:

"An acceptance is qualified, which is: (1) conditional, that is to say, which makes payment by the acceptor dependent on the fulfillment of a condition therein stated......"

These sections must all be read together when considering the effect of an acceptance. A qualified acceptance of a draft is not an unconditional promise or order to pay, and is therefore nonnegotiable. It must be noted in particular that an acceptance is not qualified unless it in "express terms varies the effect of the bill as drawn," and it is qualified when dependent on the fulfillment of "a condition therein stated"; but a promise to pay is not conditional though it refers to the "transaction which gives rise to the instrument."

It is well to restate some of the fundamental principles that underlie the law of negotiable instruments. Negotiable instruments are the chief medium of credit. As such their inviolability must be made as secure as possible. They must pass freely in the channels of commerce without embarrassment to their handlers though extrinsic matters unaffecting their integrity appear thereon. If any impediment arises in their course, it must spring from the instrument itself, and the danger signal must be so clear and certain that none may miss it. When doubt or uncertainty arises, it is resolved in favor of negotiability. Whenever an instrument shows

on its face that it embraces all the elements of a negotiable one, its negotiability is presumed. No extrinsic evidence may be considered to show nonnegotiability: Perth Amboy Trust Co. v. Modern School Assn., 154 Atl. 418 (N. J., 1931); International Finance Corp. v. Northwestern Drug Co., 282 Fed. 920. The paper travels as "a courier without luggage" until this presumptive freedom of transferability is clearly and definitely restrained by its own evident limitations: mere words of ambiguity will not restrain its course. There must appear on its face clear, certain and manifest notice of its conditional character. In such perilous times as now confront us, we are called upon to be particularly careful lest, in seeking to prevent the consummation of a fraud, we do great harm to business generally, for the greater the shrinkage in commerce the more certainly is the freedom of negotiable instruments required as a stimulus to commerce.

When the channels of commerce are clogged by uncertainty and apprehension, and the tide of business confidence is at its lowest ebb, an individual who places such an instrument in trade is burdened with the necessity of showing by reference to its face that the instrument is nonnegotiable.

Thus guided by these principles of interpretation and policy, in the further determination of the effect of the words used in these acceptances, it may be stated that it is of no importance what the acceptor meant by the precise phraseology he used. His subjective intention in placing the words "as per......contract" in the acceptances is a matter of indifference. The controlling factor in determining the effect of these words is the reaction of a mind ordinarily accustomed to business transactions when reading these words in such an instrument.

When the drafts were presented to appellant, they were unquestionably in form negotiable. It inserted after the word "payment" in the printed form, which read "Accepted for payment for amount and date shown

hereon," the phrase "as per Reolo contract," thus causing it to read "Accepted for payment as per Reolo contract for amount and date shown hereon." It now seeks to stamp the drafts as conditional, nonnegotiable and subject to any defense by the acceptor though they are in the hands of a third person without notice and before maturity. What did the words themselves import?

Appellant contends they were inserted for the purpose of notifying future holders that the acceptance was in accordance with and subject to the terms of the contract between Reolo, Inc., and the acceptor, while appellee urges that the phrase "as per......contract" is a mere "statement of the transaction which gave rise to the instrument"; it merely earmarked the transaction or stated the consideration for the acceptance. It may be well argued that both inferences are deducible from the language employed. Such being the case, public policy as to negotiability discussed above becomes a most material element in influencing the decision of courts. As stated in Waterbury-Wallace Co. v. Ivey, 163 N. Y. Supp. 719, 99 Misc. Rep. 260: "The tendency......is to construe commercial instruments having on them a memorandum or reference to dealings between the parties as negotiable, if they in other respects have all the characteristics of negotiability." The acceptances before us have these characteristics.

The Negotiable Instrument Act itself provides that a qualified or conditional acceptance must be "in express terms to vary the effect of the bill." "Express terms" can mean only what it says; terms that are clear, unambiguous, definite, certain, and unequivocal. They must convey to the mind of any reasonable person taking the draft the one and only conclusion that payment was subject to the qualification therein set forth or to extraneous matters. Nothing must be left to inference, conjecture or supposition: United States v. Bank of the Metropolis, 15 Pet. 377; Coffman v. Campbell Co., 87 Ill. 98; Myer & Co. v. Decroix Verley (1891), A. C.

520. Of course, judicial interpretation of the statute should not carry to the point of absurdity. The act distinctly recognizes that instruments in form negotiable may be made conditional and nonnegotiable. This may be done in specific ways. Therefore, it has been held that the use of such words as "subject to......contract" imposes on the instrument qualification or condition,* and in a number of cases words of similar import have been held to be conditional terms, but the cases are clearly distinguishable from the instant case. The words here used cannot be interpreted as a clear, definite or unequivocal modification of the promise.

The act states the law which was evolved from practice, usage and the understanding of commerce. It has been customary for a long time to identify the instrument as a part of the transaction out of which it grew by reference thereto on its face; and the law, in accordance with commercial usage, has consistently held that such identification does not curtail negotiability: International Finance Co. v. Northwestern Drug Co., supra. This case involved the identical situation presented to us. The court stated: "I am of the opinion, in view of the cases of Nat. Bank v. Wentworth, 218 Mass. 30, 105 N. E. 626; Snelling St. Bank v. Clasen, 132 Minn. 404, 157 N. W. 643, 6 A. L. R. 1663; Waterbury Co. v. Ivey, 99 Misc. Rep. 260, 163 N. Y. Supp. 719, and other cases along the same line, that this instrument in suit on its face is a negotiable instrument, and that the words 'as per Reolo contract' were not sufficient to destroy its negotiability."

In addition to the cases there cited, reference is made to the following cases interpreting similar phrases: Strand Amusement Co. v. Fox, 205 Ala. 183; Culbreath

---

* Klots Throwing Machine Co. v. Manufacturers Commercial Co., 179 Fed. 813; McComas v. Haas, 107 Ind. 512, 8 N. E. 579; Dilley v. VanWie, 6 Wis. 209; Cushing v. Field, 70 Me. 50, 35 Am. Rep. 293; American Exchange Bank v. Blanchard, 7 Allen (Mass.) 333.

v. Giuterman, 217 Ala. 259; Slaughter v. Bank of Bisbee, 17 Ariz. 484; Trice v. Peoples Loan and Investment Co., 173 Ark. 1160; Doyle v. Considine, 195 Ill. App. 311; Tyler v. Whitney-Central Trust Co., 157 La. 249; Taylor v. Curry, 109 Mass. 36; Nat. Bank of Newbury v. Wentworth, 218 Mass. 30; Voges v. Ward, 123 So. 785 (Fla., 1929) ; Utah Lake Irrigation Co. v. Allen, 64 Utah 511; Mason v. Shaffer, 82 W. Va. 632.

Appellant presses upon us the argument that the position of the extraneous reference on the instrument condemns the acceptance as conditional. We have examined the cases to determine whether or not the test of collocation is conclusive aside from logic, and find that it is not. Furthermore, it is unwise to require one to whom an instrument is offered to make so nice a study to determine whether a phrase modifies one portion or another of the sentence within which it is contained. Business men are not required to be grammarians, neither can they devote time in the rush of commercial transactions to parsing sentences, nor pause to consult rhetoricians. The duty of impressing a condition on an acceptance or a promise to pay lies upon him who would so qualify it. He must make his intention manifest. To impose on the purchaser the burden of construing ambiguous or uncertain phrases on commercial paper would strike at the basis of its strength in business. The whole tendency of social thought and judicial decision is toward the mobility and transferability of property and of rights therein.

Appellant has cited the case of International Finance Corp. v. Calvert Drug Co., 144 Md. 303, which involves drafts identical with those here being considered, drawn by the same drawer, connected with a contract similar to that pursuant to which the drafts herein were issued, and accepted in the identical language of these drafts. The court there held the acceptances to be conditional. We have read the opinion of the Maryland court with

great care: we are unable to follow it for the reasons which we have stated in this opinion.

Appellant urges that if it is concluded that two meanings may be taken from the words "as per......contract," one of which would make the acceptance (payment) *subject to the terms of the contract,* then the holder, appellee, in fact adopted this interpretation. To make certain there was no defense it insisted on having a certified copy of the Reolo contract. Instead of procuring it from the acceptor, who was the payor in the draft, before the note was purchased, it took from the drawer a copy which turned out to be fraudulent in the material part. Appellee, under these circumstances, it is contended, was bound to make a reasonable investigation notwithstanding the legal effect of the writing, and a reasonable investigation would require something from the acceptor. If, as a fact, appellee had notice of the infirmity of the draft before he took it, regardless of its appearance, of course he would be bound by whatever knowledge he acquired; but we are limited by the case stated. Had it stated or approximated the position urged, as this is a summary judgment, appellant's position would be unassailable. It is agreed in the case stated that appellee is a bona fide owner and holder, and that the certified copy was made "for the purpose of record." We find nothing in the use of these words, "for the purpose of record," that would carry the case to the extent appellant urges. They indicate nothing more than that the copy of the contract was merely one for appellee's files. We cannot infer facts not stated, and we cannot conclude that appellee was in any wise affected with notice of a defect by merely procuring a copy of the contract from the drawer at the time he purchased the draft.

Judgment affirmed.