Paul E. GUTEKUNST, Appellant,

v.

CONTINENTAL INSURANCE COMPANY, Appellee.

No. 25, Docket 73-1204.

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1973.

Decided Oct. 16, 1973.

Daniel A. Pollack, New York City (Neil D. Thompson, and Pollack & Sing-

er, New York City, on the brief), for appellant.

Arthur Lambert, New York City (Hendler & Murray, New York City, on the brief), for appellee.

Before KAUFMAN, Chief Judge, and LUMBARD and TIMBERS, Circuit Judges.

PER CURIAM:

In August 1964 certain bearer bonds were stolen from Dr. Gutekunst's residence in Philadelphia. In October 1964 one Herbert Schwartzman appeared at the branch of Manufacturers Hanover Trust Company ("Manufacturers") located at 39th Street and Seventh Avenue in New York City. He was accompanied by Herman Nowick, a certified public accountant, who on several occasions in the past had introduced customers to the officers of this branch and assisted them in obtaining personal loans. Nowick introduced Schwartzman to the loan officer on duty, Nathan Plishtin, and recommended that the bank lend him $11,500 on the collateral of $23,000 of bearer bonds. These later proved to be the Gutekunst bonds stolen two months previously. No proof was offered at trial concerning the means by which they had come into Schwartzman's possession.

Plishtin approved the loan on the strength of Nowick's recommendation, some minimal questioning of Schwartzman, and the apparent regularity of the bonds on their face. It is conceded that neither he nor William Zitek, the bank officer who dealt with Schwartzman on subsequent occasions, made any investigation of Schwartzman or his authority to transfer the securities.[1] On three other occasions in October the bank advanced further credit on the strength of the same collateral. The total indebtedness of Schwartzman exceeded $21,000 at the end of October, when he defaulted.

The bank attempted to sell the bonds but was informed by its broker on November 2 that they were listed as having been stolen.

The bonds then came into the possession of the United States Attorney for the Southern District of New York, who used them as evidence in criminal proceedings. Plaintiff brought this action to recover the securities from the United States. Since the Government was merely a stakeholder, it was permitted to deposit the bonds in the court registry and was dismissed as a party. Adverse claimants came forth and were joined as defendants. One of these was the appellee Continental Insurance Company ("Continental"), which had received assignment of the claim of Manufacturers.

The only issue is whether Manufacturers enjoyed the status of a bona fide purchaser under §§ 8–301 to 8–304 of the New York Uniform Commercial Code, so as to cut off the rights of Gutekunst, the "true" owner. Continental's claim, of course, is wholly dependent upon that of Manufacturers in whose shoes it stands. The burden of proof was on Continental as the party claiming the rights of a bona fide purchaser. See Otten v. Marasco, 353 F.2d 563 (2d Cir. 1965).

Appellant asserts that Manufacturers acted in bad faith because it dealt with a total stranger without making any investigation of him or his right to negotiate the securities. Reliance is placed on Canajoharie National Bank v. Diefendorf, 123 N.Y. 191, 25 N.E. 402 (1890), and its progeny, for the principle that negligence in dealing with negotiable instruments may be so gross as to constitute bad faith.

Despite some broad language in the cases, the New York law is that only actual knowledge or disregard of suspicious circumstances may constitute

---

1. Although Plishtin testified that he ordered a Dun and Bradstreet report on Schwartzman's business firm, he also stated that it was not received until after the loan was made, and hence not relied upon by the bank in approving the transaction.

evidence of bad faith. These decisions have been codified in UCC § 8–304(3) which requires that the purchaser have "knowledge of *such facts* that his taking the security amounts to bad faith." (Emphasis added) Plaintiff concedes, however, that Manufacturers did not know any facts which should have aroused its suspicion. The entire argument proceeds from the premise that because the bank knew nothing about either Schwartzman or the bonds, it acted in bad faith in failing to investigate. This assertion must fall before the clear rule set forth in the New York decisions and statute that it is not ignorance, but guilty knowledge or conduct that can be equated with guilty knowledge, that can rise to bad faith.

 Appellant also contends that the district court erred in failing to find that the bank had received notice of the adverse claim. There was some evidence at trial tending to indicate that a stolen-security circular may have been sent to the bank's main office prior to the transactions with Schwartzman at the 39th Street branch.[2] Judge Duffy did not deem it necessary to make a finding on whether the main branch received this flyer, because he viewed the New York law as providing that notice received by one branch of a bank does not constitute constructive notice to any other branch of the same bank. We agree with this statement of the law; *see* UCC § 4–106; Chrzanowska v. Corn Exchange Bank, 173 App.Div. 285, 159 N.Y.S. 385, aff'd, 225 N.Y. 728, 122 N.E. 877 (1919).

Since the bank acted in good faith and without notice, it was a bona fide purchaser and Continental was properly held entitled to the bonds. Accordingly, the judgment is affirmed.

---

2. Continental argues that under New York evidence law, the proof in this case concerning transmittal of the circular to Manufacturers was inadmissible. Judge Duffy did not place any reliance on any of this evidence in reaching his decision. Because we agree with his view that receipt of notice at the main office was not constructive notice to the branch bank, and since appellee introduced evidence to support the finding that the 39th Street branch did not have actual notice of the circular, we need not decide the evidentiary question.