**MANUFACTURERS AND TRADERS TRUST COMPANY**

v.

**C. E. MURPHY**

v.

**David BROWNSWORTH.**

**Civ. A. No. 41–73 Erie.**

United States District Court,
W. D. Pennsylvania.

Jan. 14, 1974.

William J. Kelly, Erie, Pa., for plaintiff.

Gerald Lesher, Pittsburgh, Pa., for defendant.

## OPINION

KNOX, District Judge.

This diversity action arose out of a contract between the defendant C. E. Murphy (hereinafter Murphy), a Pennsylvania resident, and the third-party defendant, David Brownsworth (hereinafter Brownsworth). On September 27, 1972, a personal check for $15,000 was given by Murphy at Meadville, Pennsylvania, to Brownsworth in consideration of monies (including a $5,000 profit on Murphy's investment) expected to be derived within a short time from the purchase and resale of carpet fabric by Brownsworth. On September 28, 1972, in the afternoon, Murphy became suspicious of the transaction and placed a stop payment order on the check.

Meanwhile, Brownsworth, on the morning of September 28, 1972, went to the Silvercreek, New York, branch of the plaintiff bank, Manufacturers and Traders Trust Company, a New York corporation (hereinafter M & T) and received a cashier's check for $15,000 to replace Murphy's personal check in that amount. Although the Silvercreek manager vaguely knew Brownsworth, he nevertheless called Murphy's bank, The First National Bank of Pennsylvania in Meadville, Pennsylvania, to verify the check and determine if monies were available in the Murphy account. The Meadville bank told the Silvercreek manager that there were sufficient funds to cover the $15,000 check. Thereafter, the Silvercreek manager issued a cashier's check for the full amount to Brownsworth. It is important to note that the transaction occurred *prior to* Murphy placing a stop payment on his check.

Later, on September 28, Brownsworth took this $15,000 cashier's check to the Fredonia, New York, branch of the plaintiff bank and received $3,000 in cash and four cashier's checks for $3,000 each. Finally, on September 28, Brownsworth cashed two of these $3,000 cashier's checks at the plaintiff's branch bank at the Buffalo New York International Airport and received $6,000 in cash. The remaining two cashier's checks were cashed later in Las Vegas, Nevada. Plaintiff Bank then sued Murphy in this district court upon the original check given to Brownsworth.

The plaintiff, in this motion, requests summary judgment on the grounds that it is a holder in due course of defendant's personal check for $15,000 and thus entitled to recovery. The defendant disputes plaintiff, citing a lack of good faith by plaintiff which would destroy its status as a holder in due course.

It is elementary that this court is precluded from entering summary judgment if there remains any genuine issue of material fact (see Rule 56(c) of the Federal Rules of Civil Procedure). The onus is upon the moving party to establish that there are no genuine issues as to material facts and that it is entitled to a judgment as a matter of law. Janek v. Celebrezze, 336 F.2d 828 (3d Cir. 1964). In this connection, we must keep in mind that all doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party. United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed. 2d 176 (1962); First Pennsylvania Banking and Trust Co. v. United States Life Insurance Co., 421 F.2d 959, 962 (3d Cir. 1969). Doubtful cases should go to trial.

In this case, however, we have concluded that there does not exist a genuine issue of material fact for a jury to determine. Therefore, for the reasons hereinafter stated, summary judgment will be granted in favor of plaintiff.

M & T claims that it is a holder in due course in compliance with the requirements of 3–302 of the Uniform

Commercial Code 12A P.S. § 3–302.[1] McKinney's Uniform Commercial Code of New York, §§ 1–101 to 10–105.

Under that section, plaintiff claims it gave value (its cashier's check for $15,000, see 12A P.S. § 3–303(c)) in good faith (having contacted Murphy's Meadville Bank to verify account and the sufficiency of funds) and had no notice of defenses or claims against the instrument when taken (the stop payment order by Murphy was not made until later). M & T has presented the check and its evidence of being a holder in due course which it has the burden of establishing. At that point, the defendant, Murphy, must come forward with evidence which would establish, if believed, that plaintiff is not a holder in due course. See Penneys v. Segal, 410 Pa. 308, 189 A.2d 185 (1963).

The defendant contends that M & T is not a holder in due course since it lacked the good faith required to be such a holder. In support of this proposition, Murphy advances two theories:

First, that because Brownsworth was not a regular customer at M & T bank that the cashing or giving of a cashier's check was not in good faith generally. This argument overlooks the fact that the Silvercreek manager of plaintiff's branch bank called Murphy's bank in Meadville to verify the account and the sufficiency of funds on this check which appeared authentic on its face. Therefore, we reject this argument. It must be kept in mind that the law favors negotiability of a negotiable instrument. First National Bank v. Goldberg, 340 Pa. 337, 17 A.2d 377 (1941); In re Gerber's Estate, 337 Pa. 108, 9 A.2d 438 (1939); International Finance Corp. v. Philadelphia Wholesale Drug Co., 312 Pa. 280, 167 A. 790 (1933).

Second, that a lack of good faith is shown on plaintiff's part by the conflicting stories given by Brownsworth to two of the branch bank managers. This, defendant alleges, gave some type of notice to the bank generally which would make them suspicious and destroy any good faith in dealing with Brownsworth. This notice to the branch offices fails on its face to convince us Gutekunst v. Continental Insurance Co., 486 F.2d 194 (2d Cir. 1973) but it furthermore lacks merit for the reason that the plaintiff bank was irrevocably committed[2] on the $15,000 personal check of Murphy *prior to* a different story being given by Brownsworth at the Fredonia branch office. M & T became liable to pay on its $15,000 cashier's check immediately upon issuing it. It became a holder in due course at that moment and later events would make no difference in that status. Therefore, we reject this theory of defendant as well.

Under normal circumstances, good faith as defined in 12A P.S. § 1–201(19)[3] must be determined by a jury. McKinley v. Wainstein, 81 Pa.Super. 596 (1923); Bank of America v. Rocco, 241 F.2d 455 (3d Cir. 1957), but where the evidence is undisputed and conclusive, it is the court's duty to decide the point as a matter of law. Fehr v. Campbell, 288 Pa. 549, 137 A. 113 (1927); any other rule would impair the negotiability of instruments and seriously impair commercial transactions.

1. § 3–302(1) A holder in due course is a holder who takes the instrument
    (a) for value; and
    (b) in good faith; and
    (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

2. § 3–303 Taking for Value. A holder takes the instrument for value (c) when he gives a *negotiable instrument for it or makes an irrevocable commitment to a third person.*

A cashier's check is a negotiable instrument and an irrevocable commitment. State of Pennsylvania v. Cirtis National Bank, 427 F.2d 395 (5th Cir. 1970). See also, T.P.O., Inc. v. Federal Deposit Insurance Corp., 487 F.2d 131 (3d Cir. 1973) affirmed per curiam October 30, 1973.

3. § 1–201(19) "Good faith" means honesty in fact in the conduct or transaction concerned.

**14**

Furthermore, the defendant has failed within the totality of the circumstances in this case to show any bad faith on the part of M & T. In re Stroudsburg Security Trust Company, 145 Pa.Super. 44, 20 A.2d 890 (1941); see Gutekunst, supra, 486 F.2d, pages 195, 196.

We therefore determine as a matter of law that plaintiff is a holder in due course of the Murphy check for $15,000.

Having established this, the defendant's defense of failure of consideration must fail as against a holder in due course. Compare §§ 3–305 and 3–306; See Early Receiver v. Huntley, 315 Pa. 382, 172 A. 683 (1934).

Although New York law properly applies to this case, since most of the significant contacts occurred there, the New York and Pennsylvania laws are essentially the same in this area both having the same provisions of the Uniform Commercial Code. Therefore, since no cases have been cited to us by the parties which would lead us to a contrary result nor have we found any, we assume that the results would be the same under New York law as under Pennsylvania law. See Gutekunst v. Continental Insurance Co., supra.