## VALLEY BANK & TRUST COMPANY
### v.
## AMERICAN UTILITIES, INC.
### Civ. A. No. 75–927.
United States District Court,
E. D. Pennsylvania.

June 18, 1976.

---

Samuel E. Dennis, Philadelphia, Pa., for plaintiff.

E. Barclay Cale, Jr., Philadelphia, Pa., for defendant.

MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Presently pending before the Court is plaintiff's motion for summary judgment and the defendant's response thereto. The instant action presents the issues of whether plaintiff is a holder in due course of a negotiable instrument and whether defendant has established a defense which would not entitle plaintiff to recover on the instrument. For the reasons hereinafter stated, we conclude that there does not exist a genuine issue of material fact for a jury to determine, and we grant plaintiff's motion for summary judgment.

This diversity action arises out of the negotiation of a negotiable promissory note to the plaintiff bank. Defendant American Utilities, Inc. (hereinafter "Utilities") purchased nine water companies from American Realty Service Corporation (hereinafter "Realty") pursuant to an Agreement dated August 25, 1972. As part of the purchase price, defendant Utilities issued a negotiable promissory note to Realty on February 28, 1973 in the sum of $1,128,179.00. Said note provided for payments of principal and interest to commence on February 28, 1974, and continue thereafter for eight equal annual installments. Defendant Utilities and Realty executed an Assignment and Consent dated September 20, 1973, which permitted Realty to transfer and negotiate said note to the plaintiff Valley Bank and Trust Company (hereinafter "Valley Bank") as collateral for a loan from Valley Bank to Realty. Accordingly, on September 20, 1973, Realty endorsed and negotiated said note to Valley Bank.

Plaintiff alleges in its complaint that it is a holder in due course of said note and that

defendant defaulted in the first installment payment due on February 28, 1974. Plaintiff also alleges that on February 13, 1975, it gave written notice of default to defendant and declared the total amount of the note plus interest to be immediately due and payable pursuant to the terms of the note. Consequently, plaintiff seeks judgment against defendant on the note in the amount of $1,128,179.00, plus interest from February 28, 1973, and costs and attorney's fees. Defendant contends that Realty breached certain express warranties contained in the August 25, 1972 sale agreement for the nine water companies; namely, that Realty had marketable title to these properties, that Realty possessed sufficient water rights, that there were no claims against the companies nor were they in violation of any law, franchise rule or regulation of a governmental agency, that each utility system was adequate to serve the franchise area, and that there were 10,959 active customers. As a result of these alleged breaches by Realty, defendant Utilities in its answer to the complaint denies that the note in question is in default and asserts a counterclaim and setoff against the note based upon these alleged breaches.

In its motion for summary judgment, plaintiff contends that it is entitled to judgment as a matter of law based upon (1) paragraphs 1 through 4 of the complaint and the admissions contained in paragraphs 1 through 4 of defendant's answer, (2) paragraphs 9 through 15 of defendant's counterclaim and setoff and the plaintiff's corresponding reply thereto, and (3) the affidavit of John F. Thompson, III, senior vice-president of the plaintiff Valley Bank. In its original reply to plaintiff's motion for summary judgment, defendant requested that this Court permit it the opportunity to conduct discovery so that it would be able to present sufficient evidence that there were genuine issues of material fact in the instant matter. We have permitted defendant the fullest opportunity to conduct such

discovery, and thereafter we have held oral argument on plaintiff's motion. The record is presently composed of the pleadings, the affidavit of Mr. Thompson, interrogatories and answers thereto by the parties, and the depositions taken by defendant, all of which we consider in order to decide the pending motion.

Plaintiff Valley Bank contends that it is a holder in due course in compliance with the requirements of Section 3–302 of the Uniform Commercial Code, 12A P.S. § 3–302(1). Defendant Utilities, on the other hand, contends that Valley Bank is not a holder in due course since it lacked the good faith required to be such a holder. Section 3–302 provides:

§ 3–302. Holder in Due Course

(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

■ Initially, it appeared from defendant's reply memorandum of law and supplemental memorandum of law that defendant contested the fact that Valley Bank took the note in question either for value, in good faith or without notice of any defenses. However, at the oral argument on this matter, defendant conceded that there is no question that Valley Bank took the note for value and without notice of any defense to it. This is so because the evidence of record affirmatively shows that the note in question was negotiated to Valley Bank as collateral in consideration of the conversion of Realty's short term borrowings from plaintiff into a long term loan. Such an arrangement comes within the definition of taking for value contained in Section 3–303 of the Code.[1] The evidence of record also affirmatively shows that Valley Bank took

---

1. § 3–303. Taking for Value
   A holder takes the instrument for value
   .    .    .    .    .
   (b) when he takes the instrument in payment

of or as security for an antecedent claim against any person whether or not the claim is due; or
   .    .    .    .    .

the note in question without notice of any defense to it on the part of any person. We note that defendant itself admits in its answers to plaintiff's interrogatories that it did not learn of any of the alleged breaches of warranty by American Realty until June, 1974 and thereafter; however, significantly the note in question was negotiated to Valley Bank prior thereto on September 20, 1973.

■ In support of its position that Valley Bank lacked the good faith necessary to become a holder in due course, Utilities essentially advances two theories. First, defendant contends that bad faith may be inferred from the fact that there is a difference in the deposition testimony concerning Valley Bank's knowledge of American Realty's water utility business and Valley Bank's knowledge of the existence of the note in question prior to its negotiation to them. More specifically, defendant Utilities contends that Valley Bank had an active business relationship with Realty that extended over a twenty-five year period, and that Valley Bank first learned of the note in question in February, 1973, rather than August, 1973, as testified to on deposition. Even if we accept defendant's contentions as being true, which we do for purposes of this motion, we do not find that it could establish bad faith on the part of Valley Bank.

The crucial factor here is not plaintiff's knowledge of Realty's general business or plaintiff's knowledge of the existence of the note in question, but rather it is plaintiff's knowledge of a defense to the note or the underlying contract of sale. Thus, Section 3–304 of the Code, 12A P.S. § 3–304, provides: .

§ 3–304. Notice to Purchaser

. . . . .

(4) Knowledge of the following facts does not of itself give the purchaser notice of a defense or claim

. . . . .

(b) that it was issued or negotiated in return for an executory promise or accompanied by a separate agreement, unless the purchaser has notice that a defense or claim has arisen from the terms thereof;

The import of this provision is explained by paragraph 9 of the Comment following Section 3–304, as follows:

Mere notice of the existence of an executory promise or a separate agreement does not prevent the holder from taking in due course, and such notice may even appear in the instrument itself. If the purchaser has notice of any default in the promise or agreement which gives rise to a defense or claim against the instrument, he is on notice to the same extent as in the case of any other information as to the existence of a defense or claim.

The evidence of record conclusively shows that Valley Bank at the time the note was negotiated, had no notice of any defense to the note or of any defense to the underlying contract of sale. Accordingly, we find no merit in defendant's first theory.

■ Second, Utilities contends that though Valley Bank knew of Realty's deteriorating financial situation, it deliberately failed to inquire into the real worth of Utilities note or into the contents of the underlying agreement of sale. Utilities argues that this failure to inquire on the part of Valley Bank establishes a lack of good faith. Initially, we find rather curious defendant's argument that knowledge of the payee's financial condition imposes a duty of inquiry as to the financial condition of the maker of a note. Nevertheless, the proper test for determining good faith in Pennsylvania is not one of negligence or a duty to inquire, but rather it is one of willful dishonesty or actual knowledge. Thus, in *First Nat. Bank of Blairstown v. Goldberg*, 340 Pa. 337, 17 A.2d 377 (1941), the Court stated:

Perhaps defendants should have been more circumspect in handling the bonds, and they might have made a more thorough examination into the identity and reliability of Gross, but with negotiable instruments the test is not care but good faith. To defeat the rights of one dealing with negotiable securities it is not

enough to show that he took them under circumstances which ought to excite the suspicion of a prudent man and cause him to make inquiry, but that he had actual knowledge of an infirmity or defect, or of such facts that his failure to make further inquiry would indicate a deliberate desire on his part to evade knowledge because of a belief or fear that investigation would disclose a vice in the transaction. This test, that of good faith with respect to negotiable instruments, is prescribed alike at common law, by the Negotiable Instruments Law of 1901 . . . and by the Uniform Fiduciaries Act of 1923, . . . 17 A.2d at 378–79.

Accord: *The First National Bank v. Anderson*, 7 Pa.D. & C.2d 661 (1956).

Since the evidence of record conclusively shows that Valley Bank did not have knowledge of any defense to the note or take the note under such suspicious circumstances as to make inquiry concerning defenses necessary, we find no merit in defendant's second theory. Indeed, Utilities' suggestion that Valley Bank did not make the necessary inquiries ignores the undisputed fact that Valley Bank did inquire of Utilities and Utilities did not cast any doubt on the validity of the note or its intention to pay. Thus, simultaneously with the negotiation of the note in question, Utilities and Realty also executed and delivered to Valley Bank an "Assignment and Consent".[2] Said Assignment and Consent contains the following language on page 2:

NOW, THEREFORE, in consideration of One Dollar ($1.00) and other good and valid consideration, the receipt of which by Realty and Utilities is hereby acknowledged, simultaneously with the execution hereof, Realty does transfer and negotiate to the order of the Bank the said note dated February 28, 1973, *which note evidences a valid outstanding indebtedness of Utilities* which now amounts to $1,128,179.00 the original sum, plus six per centum (6%) annual interest from February 28, 1973, . . . [Emphasis added.]

Further, said Assignment contains the following language on page 4:

*Utilities* hereby agrees and approves of said transfer and negotiation by Realty of its said note dated February 28, 1973, to the Bank and *hereby agrees to make all future payments due thereunder directly to the Bank* until hereafter directed to the contrary by the Bank, . . . [Emphasis added.]

We reject both of defendant's theories concerning plaintiff's lack of good faith, and we believe the evidence of record to be conclusive on this point. Under these circumstances, the principle stated in *Manufacturers and Traders Trust Company v. Murphy*, 369 F.Supp. 11 (W.D.Pa.1974) applies to the instant matter:

Under normal circumstances, good faith as defined in 12A P.S. § 1–201(19) must be determined by a jury. *McKinley v. Wainstein*, 81 Pa.Super. 596 (1923); *Bank of America v. Rocco*, 241 F.2d 455 (3d Cir. 1957), but where the evidence is undisputed and conclusive, it is the court's duty to decide the point as a matter of law. *Fehr v. Campbell*, 288 Pa. 549, 137 A. 113 (1927); any other rule would impair the negotiability of instruments and seriously impair commercial transactions. [Footnote omitted.] 369 F.Supp. at 13.

Accordingly, since there is no genuine issue as to any material fact, we hold as a matter of law that plaintiff took the note in question in good faith, and that plaintiff is a holder in due course of said note. As a holder in due course, plaintiff is not subject to the defenses, counterclaim and setoff raised by the defendant; therefore, we enter summary judgment in favor of plaintiff in this action.

---

**2.** See Exhibit B attached to plaintiff's complaint.