831 F.2d 1063
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BANK FUR GEMEINWIRTSCHAFT, Plaintiff-Appellant,
v.
VIVIANO WINE IMPORTERS, Defendant-Appellee.
 No. 85-1753.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1987.
 
 Before ENGEL and NATHANIEL R. JONES, Circuit Judges, and GEORGE CLIFTON EDWARDS, Senior Circuit judge.
 ENGEL, Circuit Judge.
 
 
 1
 The plaintiff Bank Fur Gemeinwirtschaft (BFG) appeals a decision of the United States District Court for the Eastern District of Michigan, which, following a bench trial, entered a judgment for Viviano Wine Importers, Inc. BFG sued to collect on six $30,000 promissory notes that the defendant had refused to honor. The defendant had issued eight notes in blank, and had delivered them to the American sales agent for Mannsperger & Co., Gmbh. Mannsperger negotiated the eight notes to the plaintiff Bank Fur Gemeinwirtschaft (BFG), which had a revolving credit agreement with Mannsperger. The defendant refused to honor the notes because it believed that Mannsperger had made an anticipatory, breach of the shipping contract that the notes had been issued to secure. The district court held that the plaintiff was not a holder in due course of the six notes Viviano had refused to honor. Therefore, BFG was not entitled to avoid Viviano's defense of lack of consideration for the notes. The district court also dismissed defendant's counter-complaint to recover the sums paid to BFG when Viviano honored its first two notes. No appeal was perfected from the dismissal of the counter-complaint.
 
 
 2
 In October 1980, the plaintiff contracted with Mannsperger to purchase 6,000 cases of 1976 Piesporter wine to be delivered to defendant in Detroit after May 1, 1981. To secure the contract, defendant issued eight promissory notes with a value of $30,000 for each note. The first note matured on January 15, 1981, and the others matured individually approximately every fifteen days until April, 1981. The notes were issued in blank. While Mannsperger held the notes, BFG noticed that Mannsperger had insufficient capitalization to serve as collateral for its borrowings from the bank. It demanded further security and Mannsperger promised to deliver to BFG certain freely disposable, unencumbered promissory notes that Mannsperger had acquired from the sale of wine which had been delivered to a customer. BFG was not told that Viviano was the maker of the note, nor was BFG informed that the notes were to secure shipment of wine pursuant to an executory contract. The first two notes, those due January 15 and January 30, were paid by Viviano through Manufacturers National Bank of Detroit, but not the remaining six. On March 24, 1981, Viviano informed BFG that he would not pay, as those notes were given to assure Spring 1981 delivery of the 6,000 cases of Piesporter Goldtrophchen from Mannsperger. Since Mannsperger had declared bankruptcy, Viviano claimed that the contract was voidable for lack of consideration, as it had not received even a single case of the wine. BFG nonetheless argued that Viviano must honor the six remaining notes, as Viviano's defense of lack of consideration could not be interposed against BFG because it was a holder in due course. See M.C.L.A. Sec. 440.3305.
 
 
 3
 The only issue at trial was whether plaintiff was a holder in due course of the six dishonored promissory notes. The parties agreed that this issue was governed by section 3-302 of the Uniform Commercial Code:
 
 
 4
 Section 3302.
 
 
 5
 (1) A holder in due course is a holder who takes the instrument
 
 
 6
 (a) for value; and
 
 
 7
 (b) in good faith; and
 
 
 8
 (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
 
 
 9
 M.C.L.A. Sec.440.3302. Further, the parties agreed that the plaintiff was a holder, that the instruments were negotiable, and that they were accepted for value. See M.C.L.A. 440.3303(b). Therefore, the only factual questions resolved by the district court were whether BFG at the time it took the promissory notes did so in good faith and without notice of the defense of lack of consideration. The district judge found that BFG took the notes in bad faith and with notice. He therefore entered judgment in favor of defendant Viviano.
 
 
 10
 The basis for the court's factual finding was that BFG and Mannsperger had had a longstanding creditor/debtor relationship, and that BFG was completely aware of Mannsperger's business as a wine exporter. Therefore, the district court would not credit BFG's arguments that its officials were unaware of Mannsperger's critical financial condition, and also did not realize that the notes were given as security for future delivery of wine. Further, the district court found that the motive for BFG's bad faith was to rectify its overextension of credit to a client with a losing business operation by causing Viviano to lose $240,000 without receiving any wine in return.,
 
 
 11
 When determining whether a potential holder in due course took an instrument in good faith and without notice of defenses, a district court must undertake a subjective, not an objective, inquiry into whether the requirements are met. Corporacion Venezolana de Fomento v. Vintero Sales, 452 F. Supp. 1108 (S.D.N.Y. (1978), remanded, 607 F.2d 994 (2d Cir. 1979). While the district judge in the instant case claimed to be doing this, the text of his opinion indicates that he was, in fact, applying an objective standard. Despite the absence of any evidence on these points, the judge found that BFG should have been aware of Mannsperger's financial condition and that BFG's claim of its own ignorance was not credible.
 
 
 12
 Even if we were to agree with the district judge's findings about BFG's knowledge of Mannsperger's condition, we would still have to find that the judge committed error in taking the findings into account. See, e.g., Corporacion Venezolana de Fomento, 452 F. Supp. at 1119 ("To impose upon one who is offered commercial paper the duty of inquiring in each instance whether obligations have been satisfactorily performed by prior holders would so burden such transactions as to create insuperable impediments to the free exchange of negotiable paper, an indispensable part of modern business."); J. White and R. Summers, Uniform Commercial Code (2d ed. 1980) i 14-6, p. 562, 566 ("If the holder's knowledge of a transferor's generally shoddy business practices constitutes 'notice of a defense' with respect to every instrument he transfers, this would exceed the wildest hopes of those who argued for an objective standard; but the courts show no desire to go that far."). Since the Bank's knowledge of the potential precarious financial position of Mannsperger is relevant to determining good faith and notice under the subjective standard, the district court's focus on this fact, which is actually contrary to uncontradicted testimony that Mannsperger had always delivered on all prior contracts, is both irrelevant and ill-founded.
 
 
 13
 Ordinarily, when the district court has applied an improper legal standard, an appellate court should remand the case to the district court for application of the proper legal standard by the district court, which has special expertise in the finding of facts, even when, as here, most of the facts would be determined from documents. Pullman Standard v. Swint, 456 U.S. 273, 291-92 (1982). An exception to this rule exists, however, when upon remand, application of the proper legal standard could lead to only one conclusion based on the factual record. Id. at 292. In that situation, the appellate court may properly decide the factual issues itself. "Under normal circumstances, good faith as defined in [U.C.C.] 1-201(19) must be determined by a jury. [B]ut where the evidence is undisputed and conclusive, it is the court's duty to decide the point as a matter of law. [A]ny other rule would impair the negotiability of instruments and seriously impair commercial transactions." Valley Bank & Trust Co. v. American Utilities Inc., 415 F. Supp. 298, 302 (E.D. Pa. 1976), quoting Manufacturers & Traders Trust Co. v. Murphy, 369 F. Supp. 11, 13 (W.D. Pa. 1974) (citations omitted).
 
 
 14
 On this record, BFG is a holder in due course as a matter of law. Further, even if the district court actually, rather than merely ostensibly, applied the subjective rather than objective standard of notice and good faith, its factual findings were clearly erroneous. The stipulated facts are that BFG inquired from Mannsperger whether the notes were freely negotiable, and the testimony is undisputed that it was told that the notes were issued in consideration for wine which had already been delivered by Mannsperger. Further, on these facts, there could not have been actual notice on BFG's part of the lack of consideration because that defense had not yet arisen as of the date BFG became a bolder. Because there is no factual support in the record for its findings, this court is "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 15
 The plaintiffs have raised one further issue in their appeal. They moved the trial court to disqualify itself based upon statements which were allegedly made by the trial judge during the course of pretrial procedures, and particularly with respect to conversations at the time of the settlement conference which can only be characterized as biased and which, if true, could only have been understood by the plaintiff and its representatives as casting aspersions on their ethnic origins. We have reviewed this record very carefully, because of the nature of the statements purportedly made and because of the claims, on the other hand, that the proper objections on the record were not made upon the record to preserve it for appeal. It is evident from the transcript of the post-trial hearing that the trial judge himself sincerely regretted having made such comments. Ordinarily when such a challenge is made, it is incumbent upon the trial court first to determine whether the allegations indicate to a reasonable person the existence of bias against the complaining party and, if so, it would be incumbent upon the judge at that point to cease his activity in the case and permit another judge to be assigned to it thereafter. 28 U.S.C. Sec.l44, Berger v. United States, 255 U.S. 22 (1921). We further observe "it is the appearance of impartiality with which we are concerned .... the District Judge had a duty to recuse himself in order to preserve the indispensable semblance of fairness." Roberts v. Bailar, 625 F.2d 125, 130 (6th Cir. 1980). We believe that the language apparently employed, whether indicative of actual bias or not, was sufficient to require recusal.
 
 
 16
 Litigation in this case has since gone to judgment, and this appeal has been perfected, which raises not only the disqualification issue but, as we have held, questions going to the merits. We are persuaded that the plaintiffs have proved themselves entitled to a recovery upon the notes as a matter of law. In such circumstances it would serve no good purpose simply to remand the case for trial before a new judge who was not disqualified. Accordingly, we REMAND to the district court with directions that the case be reassigned in accordance with the local rules of the Eastern District of Michigan to some other judge than that before whom it was tried, but with directions to enter a judgment in favor of the plaintiffs consistent with the holdings in this opinion.