## CCNB v. Piersol

*David Eaton,* for plaintiff.
*Nancy J. Winther,* for defendant Piersol Foods Inc.
*Kathleen E. Boyle,* for defendant PNB.
*Geoffrey S. Shuff,* for defendant James E. Piersol.

HOFFER, *J.*, June 17, 1992—The present case involves a matter of first impression for Pennsylvania courts in

the interpretation of Division 3 (Commercial Paper) and Division 4 (Bank Deposits and Collections) in the Uniform Commercial Code, 13 Pa.C.S. §1101 to §9507 (1984). The issues in this case center on the nature and treatment of personal money orders under the UCC, specifically whether the bank that issues the personal money order may stop payment on the instrument by its own initiative.

## FACTS AND PROCEDURAL HISTORY

Defendant, James E. Piersol, maintained a checking account in his name with plaintiff CCNB Bank, NA. On January 23 and 24, 1989, Piersol deposited two checks into his CCNB checking account that were drawn on his closed account with another bank. Between that time and February 2, 1989, Piersol issued checks against the false balance and incurred a $25,890.71 indebtedness to CCNB.

The following facts are admitted by defendant Pennsylvania National Bank and Trust Company (PNB) in its answer and amended new matter. On January 23, 1989, Piersol opened a checking account in his name with PNB. On February 2, 1989, Piersol deposited a check, drawn on another bank, in the amount of $46,141, into his PNB checking account. Piersol purchased a personal money order from PNB in the amount of $25,000 on February 6, 1989. Piersol purchased the personal money order with a $25,000 check drawn on his PNB checking account. Also on February 6, 1989, Piersol delivered to CCNB the $25,000 personal money order issued by PNB, which was made to the order of James E. Piersol, and a personal check drawn on PNB in the amount of $890.71. CCNB applied the personal money

order and the personal check to reduce the pre-existing debt owed to it by Piersol.

On February 7, 1989, the check for $46,141 was returned unpaid to PNB and marked with the notation "N.S.F." As a result of the returned check, there were insufficient funds available in Piersol's PNB checking account to cover the cost of the personal money order. PNB unilaterally stopped payment on the personal money order on February 7, 1989.

CCNB presented the personal money order and the personal check to PNB for payment. On February 8, 1989, CCNB was notified that the personal money order was returned unpaid because payment had been stopped and that the personal check was returned unpaid due to insufficient funds.

CCNB commenced this action on March 30, 1989, and sought to recover from PNB the face amount of the personal money order, plus interest and costs. On January 22, 1991, PNB filed its most recent answer with amended new matter, which was stipulated to by CCNB and approved by this court on January 31, 1991. On February 6, 1991, CCNB filed a consolidated reply to the original answer with new matter, and first and second amendments to new matter of PNB.

Also on February 6, 1991, CCNB filed a motion for summary judgment. In support of its motion, CCNB maintains that PNB accepted the personal money order upon its issuance and, thus, PNB violated the rights of CCNB as a holder in due course by initially stopping payment on the instrument.

On March 14, 1991, PNB responded by filing its own motion for judgment on the pleadings. PNB contends that it is not obligated to honor the personal money order as it neither signed nor accepted the instrument. PNB further argues that CCNB lacks standing to challenge PNB's decision to stop payment on the personal money order. The issues raised by these motions are before the court for disposition.

## DISCUSSION

### *Treatment of Personal Money Orders Under the UCC*

A personal money order is a negotiable instrument issued by and drawn upon a commercial or savings bank. The purchaser pays the face amount plus a small transaction fee to the drawee bank at the time of issuance. Comment, *Personal Money Orders and Teller's Checks: Mavericks under the UCC,* 67 Colum. L. Rev. 524 (1967). The face amount of the personal money order is the only aspect of the instrument that is filled out at the time of issuance. This is usually done by a checkwriter impression, as in the case at bar. All other information—name of payee and purchaser—is blank at the time the personal money order is issued.

Personal money orders have been referred to as the "poor man's checking account" and are frequently used as a "one-shot" checking account for those who cannot afford or do not desire a conventional checking account. *Id.* at 524. Personal money orders are also utilized by individuals who have a regular checking account, but are required by the payee to remit with a certified check or money order. See *Mirabile v. Udoh,* 399 N.Y.S.2d

869 (N.Y. Civ. Ct. 1977). Courts and commentators note that this preference reflects the payee's belief that a personal money order cannot be drawn on insufficient funds, unlike a personal check. See *Id.* at 869; comment, *supra* at 533.

Personal money orders are an anomaly under the UCC because there are no specific provisions governing their treatment in the code. In fact, there are no references to personal money orders in the UCC. Therefore, the rights and obligations of the purchaser, the issuing bank and the payee or holder are subject to the varying interpretations of the courts.

The case law on personal money orders is limited, yet divided, and most often concerns the purchaser's or the issuer's right to stop payment on the instrument. In determining whether the purchaser or the issuer is entitled to stop payment on the instrument, the very nature of the personal money order is in question. Some courts construe personal money orders as personal checks and allow the purchaser to stop payment on the instrument.[1]

These holdings, however, are distinguishable, because the issue in the case sub judice is whether the issuing bank may stop payment on the personal money order of its own accord. Five jurisdictions have held that the

---

1. *Duggan v. State Bank of Antioch,* 540 N.E.2d 1111 (Ill. App. Ct. 1989); *Newman v. First Nat'l State Bank of Toms River,* 414 A.2d 1367 (N.J. Super. 1980); *Garden Check Cashing Service Inc. v. First Nat'l City Bank,* 267 N.Y.S.2d 698 (N.Y. App. Div. 1966), *aff'd mem.,* 277 N.Y.S.2d 141 (N.Y. 1966); *Thompson v. Lake County Nat'l Bank,* 20 UCC Rep. Serv. (Callaghan) 142 (Ohio Ct. App. 1975); *First Nat'l Bank of Nocona v. Duncan Savings and Loan Assn.,* 656 F. Supp. 358 W.D. Okla. (1987).

issuer of a personal money order may not stop payment on the instrument unilaterally.[2] There is no jurisdiction that holds to the contrary.

In each cited case, the salient facts are identical to the case at bar. The purchaser of the personal money order presented the issuer with a check as payment for the instrument, but the check was drawn on an account with insufficient funds to cover the transaction. In each case, the issuing bank stopped payment on the personal money order upon discovery of the bounced check it received from the purchaser. The issuing bank also refused to pay the payee upon presentment of the personal money order. The payee subsequently filed suit against the issuing bank. In each case, the court held that after the sale of the personal money order, the issuing bank could not stop payment on the instrument on its own initiative.

While the courts were identical in holding that the banks become liable on the personal money order at the time of issuance, the court's analyses differed. Some courts analogized personal money orders to certified checks, cashier's checks or bank money orders. Other courts analyzed that the custom and usage of personal money orders necessitated the result and created the underlying obligation of the issuing bank. While this court

2. *Sequoyah State Bank v. Union Nat'l Bank*, 621 S.W.2d 683 (Ark. 1981); *Unger v. NCNB Nat'l Bank*, 540 So. 22, 247 (Fla. Dist. Ct. App. 1989); *Graybar Elect. Co. Inc. v. Brookline Transit Co.*, 39 UCC Rep. Serv. (Callaghan) 1721 (Mass. Dist. Ct. 1984); *Rose Check Cashing Service Inc. v. Chemical Bank N.Y. Trust Co.*, 244 N.Y.S.2d 474 (N.Y. Civ. Ct. 1963); *Interfirst Bank v. Northpark Nat'l Bank*, 621 S.W.2d 100 (Tex. Ct. App. 1984).

concurs in the judgment of its five sister courts, a clearer rationale may be gleaned from the very language and comments of the UCC.

*Liability of PNB on the Personal Money Order*

A.   Signature Requirement

PNB issued the personal money order to Piersol for consideration paid directly to it.   The personal money order:

"[D]iffers from a check or draft drawn on money or deposit with the bank by its customer, being not payable from a customer's account but from bank funds.   It is in the nature of a sale and once sold no individual is concerned with the obligation it creates, only the bank." *Interfirst Bank,* 671 S.W.2d at 103-04.

Although it issued the personal money order in question, PNB maintains that it may not be liable on the instrument because it did not sign the instrument. PNB is correct in citing section 3-401 of the UCC for the proposition that "[n]o person is liable on an instrument unless his signature appears thereon."   13 Pa.C.S. §3401(a)(1984). Nevertheless, a further reading of the same section explains that "[a] signature is made ... by any word or mark used in lieu of a written signature." 13 Pa.C.S. §3401(b)(1984). Comment 2 of section 3-401 also explains that "[a] signature may be handwritten, typed, printed or made in any other manner..."

Upon issuance, PNB marked the personal money order with a checkwriter and imprinted "PNB & Tr. Co. Wyomissing, PA 25,000 dol's 00 cts."   See complaint of CCNB, Exhibit K.   The issuing bank in *Interfirst Bank*

*v. Northpark Nat'l Bank,* 671 S.W.2d at 102, 104, also imprinted its personal money order in the same manner. Like the court in *Interfirst Bank,* we hold that the imprint of PNB's name, branch and amount satisfies the signature requirement of section 3-401(a). "The manner selected by the bank was the checkwriter inscription. This was something done at the time of sale and is in addition to the regular printed name of the bank on the money order." *Interfirst Bank,* 671 S.W.2d at 104. *American Bank & Trust Co. of Pa. v. Commonwealth Nat'l Bank,* 73 D.&C.2d 463 (1976), a Dauphin County case, also addressed the liability of an issuing bank on its personal money order. The court in *American Bank,* however, found no signature of the issuing bank on the personal money order. The facts of *American Bank* are sketchy at best and the case is readily distinguished from the case at bar. Unlike the case sub judice, there is no description of the checkwriting impression and most importantly, it is apparent that the request for stop payment was made by the purchaser of the money orders since the money orders were stolen. In the instant case the issuing bank stopped payment on the instrument unilaterally.

B. Acceptance

PNB also maintains that it may not be liable on the personal money order because it did not accept the instrument. To support its assertion, PNB is correct in citing section 3-409(a) of the UCC for the proposition that "[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." 13 Pa.C.S.

§3409(a). Nevertheless, we must further inquire whether PNB's actions when issuing the PMO constituted acceptance.

No particular formula need be used to accept a negotiable instrument. See *Hamburger Bros. & Co. v. Third Nat'l Bank & Trust Co. of Scranton,* 333 Pa. 377, 383, 5 A.2d 87, 89 (1939). Section 3-410(a) of the UCC elucidates the concept of "acceptance" by furnishing the definition and operation of the term. It provides: "Acceptance is the signed engagement of the drawee to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery of notification." 13 Pa.C.S. §3410(a).

We have held above that the checkwriter imprint of PNB's name, branch and face amount constituted PNB's signature on the personal money order. This determination, taken in conjunction with the UCC provision that acceptance may consist of the drawee's signature alone, leads this court to conclude that PNB accepted the personal money order upon issuance. See *Sequoyah State Bank,* 621 S.W.2d at 684; *Rose Check Cashing Service,* 242 N.Y.S.2d at 477; *Interfirst Bank,* 671 S.W.2d at 103. Piersol presented the instrument to PNB at its Wyomissing branch for acceptance through the means of the sale of the personal money order. PNB accepted the personal money order by affixing the instrument with its signature, "PNB & Tr. Co. Wyomissing, PA 25,000 dols 00 cts." Therefore, by accepting the personal money order, PNB "engages that [it] will pay the instrument according to its tenor at the time of [its] engagement." 13 Pa.C.S. §3413(a).

## C. Right to Stop Payment

After the sale, signing and acceptance of the personal money order by PNB, PNB could not stop payment on the instrument of its own initiative.

"The personal money order constituted an obligation of [PNB] from the moment of its sale and issuance. The fact that [PNB] was frustrated in retaining the funds because instead of cash it accepted a check drawn on insufficient funds is no reason to hold otherwise... [PNB] placed the personal money order in commerce for a consideration it accepted as adequate and was, therefore, liable on it." *Sequoyah State Bank,* 621 S.W.2d at 684; see also *Rose Check Cashing Service,* 244 N.Y.S.2d at 477; *Interfirst Bank,* 671 S.W.2d at 104.

"[I]t seems reasonable to place upon the bank the responsibility for determining whether the check is good before issuing the money order. In the event of loss, the bank retains the right to recover from the purchaser as drawer of the check." Comment, *supra,* at 532.

The UCC only provides for the right of a "customer" to stop payment. 13 Pa.C.S. §4403(a). The purchaser of a personal money order would fall within the definition of "customer" because the purchaser is a person "for whom a bank has agreed to collect items." 13 Pa.C.S. §4104(a). There is no provision in the UCC that allows a drawee to stop payment on an item unless required to do so by the drawer. See *Rose Check Cashing Service,* 244 N.Y.S.2d at 477.

The language of Comment 5 to section 4-403 of the UCC would seem to indicate, however, that the issuing bank may not stop payment on a personal money order

at the direction of the purchaser/customer, because the bank accepted the instrument upon issuance. Such a reading would not enable a purchaser to stop payment on a lost or stolen personal money order. The risk of theft or misplacement is greater with personal money orders than instruments like cashier's checks or bank money orders because the personal money order is issued with the name of the payee in blank. The interests of the purchaser, issuer and payee can be preserved by examining the status of the payee as a holder in due course.

*Status of CCNB as Holder in Due Course*

As a final matter, this court must determine whether CCNB pursues its cause of action as a holder in due course of the personal money order. Section 3-302 of the UCC provides:

"(a) *General Rule*—A holder in due course is a holder who takes the instrument:

"(1) for value;

"(2) in good faith; and

"(3) without notice that it is overdue or has been dishonored or of any defense against a claim to it on the part of any person." 13 Pa.C.S. §3302(a).

CCNB claims that it is a holder in due course in compliance with the requirements of the above statute. Specifically, CCNB maintains: that it took the personal money order for value to satisfy Piersol's indebtedness to it; that it took the personal money order in good faith in its regular course of business; and that it had no notice of defenses or claims against the personal money order when taken. See complaint and consolidated reply of CCNB.

It is now PNB's burden to establish that CCNB is not a holder in due course. *Manufacturers and Traders Trust Co. v. Murphy,* 369 F. Supp. 11, 13 (W.D. Pa. 1974), *aff'd without opinion,* 517 F.2d 1398 (3d Cir. 1975). In paragraph 76 of its amended new matter, PNB contends that CCNB was not a holder in due course of the personal money order as it did not receive the instrument for value, in good faith and without knowledge that it is subject to any defense.[3]

PNB offers this assertion, without more, to support its proposition and to meet its burden. In order to overcome the presumption in favor of CCNB, however, "evidence, not just denials in a pleading" is required. *First Nat'l Bank of Portland v. Hartman Co.,* 147 Pa. Super. 396, 398, 24 A.2d 582, 583 (1942). While the existence of the elements constituting a holder in due course is generally a question of fact, "where the evidence is undisputed and conclusive, it is the court's duty to decide the point as a matter of law; any other rule would impair the negotiability of instruments and seriously impair commercial transactions." *Manufacturers,* 369 F. Supp. at 13 (citations omitted); see also *Valley Bank and Trust Co. v. American Utilities Inc.,* 415 F. Supp. 298, 302 (E.D. Pa. 1976); *Equipment Finance Inc. v. Raker Lumber Co. Inc.,* 22 Northumb. L.J. 162, 169 (1950).

A review of the evidence in the pleadings unequivocally reveals that CCNB took the personal money order for value according to section 3-303(2) of the UCC, 13 Pa.C.S.

---

3. In its answer, PNB denies CCNB's averment of holder in due course status by stating that the averment is a "conclusion of law to which no responsive pleading is required." See defendant PNB's answer and amended new matter, paragraph 73.

§3302(2).[4] PNB admits as much when it states in paragraph 86 of its amended new matter that CCNB applied the personal money order "to reduce a pre-existing debt owed by defendant James E. Piersol to plaintiff CCNB." See also, *New Waterford Bank v. Morrison Buick Inc.,* 38 D.&C.2d 371 (1965) (where bank, in reliance on a deposited check, cancelled depositor's debt, bank was a holder for value and not merely a collection agent for its depositor); *Equipment Finance,* 22 Northumb. L.J. at 170.

There is also no evidence of record that CCNB lacked the good faith necessary to become a holder in due course, or that it took the personal money order with notice of any defense against it. Knowledge that Piersol bounced checks at CCNB imputes no knowledge to CCNB that Piersol's personal money order was purchased from PNB with insufficient funds, and it imputes no duty on CCNB to inquire into Piersol's transaction with PNB. "[T]he proper test for determining good faith in Pennsylvania is not one of negligence or duty to inquire, but rather it is one of willful dishonesty or actual knowledge," of which the record reveals none in this case. *Valley Bank,* 415 F. Supp. at 301.

Accordingly, since PNB failed to meet its burden and since there are no genuine issues of material fact, this court determines as a matter of law that CCNB is a holder in due course of the personal money order. As a holder in due course, CCNB takes the instrument free from "all

---

4. "A holder takes the instrument for value:

"(2) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due." 13 Pa.C.S. §3303(2).

defenses of any party to the instrument with whom the holder has not dealt." 13 Pa.C.S. §3-305(2). Therefore, CCNB takes the personal money order free from all defenses of PNB, including the defense of failure of consideration, and is entitled to payment. PNB "had no right to refuse payment of its own obligation" to a holder in due course. *The Law of Bank Deposits,* §2.06[3][d][iii](1990).

As there are no genuine issues of material fact and CCNB is entitled to judgment as a matter of law, this court grants CCNB's motion for summary judgment. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979). Consequently, PNB's motion for judgment on the pleadings is denied.

## ORDER OF COURT

And now, June 17, 1992, pursuant to the opinion filed this date, after careful consideration of the arguments and briefs of the parties, plaintiff CCNB's motion for summary judgment is granted and defendant PNB's motion for judgment on the pleadings is denied.